## Court of Appeals.

*June,* 1885.

## Supreme Court—General Term—Third Department.

*February,* 1885.

## PEOPLE *v.* JONES.

### MURDER—EVIDENCE.

#### (BY THE COURT OF APPEALS.)

In cases of homicide it is competent to show the conduct and feelings of defendant toward the victim, and evidence of defendant's previous threats or attempts to kill that person is admissible to show deliberation and premeditation.

Such conduct and facts are to be weighed by the jury, in connection with all the facts surrounding the homicide, to show and determine the motive and interest of defendant at the time.

Defendant first assaulted his wife, and then immediately shot her. His counsel requested the judge to charge that if defendant when he shot his wife was actuated by the same impulse as when he struck her, he was not guilty of murder in the first degree. *Held,* that a refusal to so charge was not error. What the previous impulse or motive of defendant was when he assaulted and then shot his wife was a question for the jury.

It is not error for the judge to characterize a request to charge a proposition, in slightly different words, which he has already charged, as " a mere play upon words."

That defendant was in a passion or frenzy at the time of the commission of the crime does not negative premeditation, and deliberation. It is merely one of the circumstances for the consideration of the jury.

#### (BY THE GENERAL TERM.)

For the General Term to grant a new trial on the general ground that justice requires it, or because the verdict is against the evidence, the case must be free from reasonable doubt.

In a balanced case, though the appellate court might have come to a different conclusion upon the facts, the verdict of the jury should be affirmed, especially where the trial judge has shown his satisfaction with it by denying a motion for a new trial on either of these

two grounds. It is the peculiar province of the jury to decide upon the question of premeditation and deliberation.

It is not necessary to prove an act of violence,—*e.g.*, an assault,—by an eye-witness. Facts from such an act would be the natural and probable inference are enough.

That evidence of prior acts of violence of defendant toward his victim shows the prisoner guilty of another offense, does not render such evidence incompetent on the issue on trial.

APPEAL by defendant, James Horace Jones, from a judgment of the court of Oyer and Terminer of Rensselaer County, Hon. A. M. OSBORN presiding, of November 24, 1884, convicting defendant of murder in the first degree.

The judgment of the Oyer and Terminer was affirmed at General Term in the Third Department, February 28, 1885, and defendant appealed from such judgment of affirmance to the Court of Appeals.

The facts appear in the opinion of the General Term.

*Wm. J. Ludden*, attorney for defendant, appellant.

*La Mott W. Rhodes*, district attorney, for the people, respondent.

The following opinion was delivered at General Term :

PECKHAM, J.—The respondent herein was convicted of murder in the first degree at a court of Oyer and Terminer held in Rensselaer county, for the killing of his wife on July 3, 1884, at the city of Troy.

He has appealed to this court from the judgment entered upon such conviction. The question that was most strenuously argued by his counsel was that the verdict was against the weight of evidence, and that it should not have been for a higher crime than that of murder in the second degree. Upon the coming in of the jury and the delivery of their verdict, a motion was made by counsel for the prisoner for a new trial on that ground, which was denied and an exception duly taken.

Under section 527 of the Code of Criminal Procedure, as amended by chapter 360 of the laws of 1882, this court must

review that decision, and the same section makes it our duty to grant a new trial, if the verdict be against law, or if justice requires a new trial, whether any exception be taken or not. This section grants new and very extensive powers to an appellate tribunal, and they should be exercised with great circumspection.

The case ought to be exceedingly clear which would authorize the court to grant a new trial upon the general ground that justice requires it. It is much broader than the power to grant a new trial where the verdict is thought to be against the weight of evidence, and in both cases the verdict of a jury should be regarded with high consideration, as the decision of a tribunal to which questions of fact are properly confided. It is not thought that the danger of error against the prisoner upon a mere question of fact is very imminent, and at all events the whole theory of our law is based upon the great weight to be attached to the conclusions of a jury, and especially is this the truth with regard to verdicts in criminal cases.

The safety of a civilized community lies largely in the prompt and stern administration of the criminal law. The more enlightened spirit of the age has been manifested from time to time in the mitigation by legislative act of the severity of the punishment for crime; but I think the enforcement of the laws should be the speediest possible consistent with a due regard for the rights of the accused to enable him to have a fair trial, and when convicted the punishment should be alike certain and prompt. To grant a new trial upon either of the grounds alleged, the case ought to be free from any reasonable doubt, and consequently if there be simply a balanced case, or perhaps one where the court might have come to a different conclusion upon the facts, the verdict of the jury, especially where it is satisfactory to the judge who tried the cause, manifested by a denial of a motion for a new trial on such grounds should stand affirmed.

It has become necessary, therefore, to examine the evidence returned herein, for the purpose of deciding these questions. This we have done. There was evidence given in this case, from which the jury might have found the following as facts:

The deceased was a woman a good deal older than the

prisoner, who, when he married her in March, 1883, was not more than twenty years old. At the time of such marriage the deceased had been a widow for about three years and a half, her first husband having been a soldier, and she being entitled to a pension from the United States government. This amounted in all to about $1,700 or $1,800, and with that or a portion of that property she purchased a saloon called the "Ivy Green," and after marriage the prisoner and she lived together there, he attending to the man's duties about the place, which was kept as a bar-room and restaurant. The woman had no peculiar attractions of person, being a small woman much older than he, with no voice left owing to some throat disease, and evidently not a woman to attract a young man for any other than a mercenary purpose. Almost immediately after such marriage quarreling commenced between the two, and he frequently (at least as much as four or five times in the short space of their married life) struck her, at other times he choked her, at still other times he threatened to kill her, and upon one or two occasions had shot a pistol off in her room, on one of which the shot was accompanied with a " D—n you," on his part, and immediately thereafter the deceased rushed out of the room and appeared scared. On another occasion the deceased was in her room when a shot was heard therein and the woman called the adopted mother of the deceased, occupying an adjoining room, ran at once to the room and found the deceased lying on her bed in a kind of faint and the prisoner going out of the room and downstairs immediately after the report. The prisoner was sometimes a drinking man, and had been treated once by a physician since his marriage for delirium tremens. On the morning in question, which was the 3d of July, 1884, the first seen of the prisoner he is sitting on a kind of rustic chair and leaning back against the wall in the bar-room. He is apparently all right, but in the course of his business with a man who came in there about ten o'clock A.M., and to whom he appeared entirely natural, he took two or three drinks of whisky, and before that he is not shown to have been drinking at all, except as he swore to it himself. Very soon after this time, a few moments indeed, his wife appears in the bar-room behind the bar, and the next moment he appears in altercation

with her, striking her in the face and finally knocking her up against a table outside of and a little distance beyond the bar. At this moment, while thus in the very midst of the broil, he is attacked by the so-called adopted mother of the deceased, who rushes at him to defend her child, and he administers a blow or a push to her which fells her. Then a boy, the son of deceased by her former husband, about thirteen years of age, seizes a big fork, and rushes upon the prisoner with this weapon and in a threatening manner, when he is also struck by the prisoner and disabled. The prisoner after knocking his wife down kicks her and is proceeding to do so again when remonstrated. with by a bystander. He then walks away from the deceased and goes around a corner of the room and gets in behind the bar, having thus to walk about eighteen feet, and taking a revolver from the drawer aims it at the deceased, who is distant about thirteen and a half feet, cocks the pistol and deliberately shoots her in the stomach, from which wound she very soon dies.

Parties then go to the deceased and raise her up, and some one asks for a pillow to put under her head, when the prisoner kicks or throws one towards her, and asks what's the use of making such a fuss, she is only in a fainting spell. He is then arrested and goes to jail, and that afternoon sees and talks to several persons, to whom he gives different and false versions of the affair, and claims that he did not shoot her at all, but talks rationally so far as any one can discover and seems to be entirely rational. He also asks one of the persons to ask his wife if she does not remember some of his actions during their married life in which he claims that he acted irrationally. When he arrived at the jail he looked as if he had been drinking and was badly scared, and during the time subsequent while rooming during the day in the same apartment as another prisoner nothing peculiar was observed about him. All these facts, I say, could have been found from the evidence by the jury. The judge gave a most lucid and entirely fair charge, leaving it to the jury under entirely proper directions to say whether there was such a deliberate and premeditated design to effect the death of the deceased as the law contemplates, should exist before the jury would be justified in convicting the prisoner of

murder in the first degree. The jury answers in view of all the evidence, that there was such deliberate and premeditated design, and accordingly convicts the prisoner of such crime.

Regarding that verdict this court cannot say that it is against the weight of evidence or against law, or that justice requires a new trial. The evidence leading to the verdict is stronger than that of the People *v.* Conroy, reported in the Court of Appeals in 97 *N. Y.* 62 ; 2 *N. Y. Crim. Rep.* 565, and an abstract of it in 20 *W. D.* 242.

We again state that the question of deliberation and premeditation is the peculiar province of the jury to decide upon, and upon such evidence as was adduced before this jury a verdict for the higher crime ought not to be interfered with by this court.

That the prisoner was an ugly and vicious tempered man the evidence would seem fully to prove, and that when he fired the shot he deliberately meant to kill, we think the jury was abundantly justified in deciding. The evidence adduced to show that the prisoner was insane within the meaning of the law, was of the weakest character and entitled to very little consideration. The law in regard to insanity as a defense to crime was properly laid down by the court, and the verdict of the jury, considering the whole evidence, ought to be conclusive with this court.

There are a few exceptions to be noticed which were taken by the prisoner's counsel.

It is claimed that the court erred in admitting evidence of the shooting of the pistol on a prior occasion. The objections now taken to such evidence are, that the proof that the prisoner did such shooting was not sufficiently definite, and that if he did it showed him guilty of another offense.

The evidence that he did the shooting was enough in our judgment to be laid before the jury for them to infer it. It is not necessary to prove it by an eye-witness ; facts from which such an attempt would be a natural and probable inference are enough.

The facts in our judgment were sufficient to authorize the jury, from all the circumstances in the case, to say that the prisoner fired the shots. At any rate, the evidence was proper

as showing the terms upon which the parties were living, even
if it did not go so far as to show any attempt on the part of the
prisoner, upon these occasions actually made to kill her.    That
the evidence may have tended also to show the prisoner guilty
of some other crime, is of no moment. So long as the evidence
was competent on this issue, it did not become incompetent on
that account.

The counsel for the prisoner asked the court to charge that
if the jury found that when this shot in question was fired by
the defendant, he was acting under the same impulse as when
he first struck her (Mrs. Jones) with his fists on the 3d of July,
they cannot find the defendant guilty of murder in the first
degree.    The judge declined to charge in that form, but left it
for the jury.    He had already properly and at length, and with
entire clearness, stated to the jury the law applicable to the facts
in the case in all their variety, and had properly directed the
jury as to this very question of deliberation and premeditation.
Having entirely covered the ground he was not bound to again
go over it in different language at the request of the counsel
for the prisoner.    Again, it assumed that the court must decide
as matter of law, what the intent was on the part of the pris-
oner when he was striking this defenseless and weak woman in
the face with his fists, and knocking her down and kicking and
beating her, and that such intent was not that of murder in the
first degree.    The court properly refused the request.    The
court charged, as the prisoner asked him, that if the jury find
the defendant was not acting deliberately, but impulsively,
when he first struck his wife, and that the subsequent striking
of Mrs. Harris and the boy Neals was impulsive and not
deliberate, then they must take into consideration the defend-
ant's state of mind, which would be consistent with such im-
pulse, when they consider the question of the deliberation of
the defendant when he fired the shot.    The court assented to
the correctness of the proposition, and then added, as a sort of
comment upon the proposition itself, "It is a mere play upon
words.    It seems to me that I have covered the whole ground."
An exception was taken to the expression that the request was
a mere play upon words, and is now gravely argued as a reason

for reversing this judgment. The statement of the matter is sufficient argument.

A request was also made as follows : " That upon the question of deliberation under the facts of this case, the jury must not consider the previous threats or attempts to take the life of the deceased, which have been sworn to on the part of the people." This was refused, and an exception taken. The evidence was competent, and being in, the jury had a right to regard it and all other evidence in the case, for the purpose of determining the crime of which the prisoner was guilty.

We have looked with care at all the other grounds argued by prisoner's counsel, and especially at that with regard to which some special faith appeared to be felt by the prisoner's counsel, viz.; upon the duty of individual jurors as to a disagreement. We think the proper disposition was made by the court below.*

In looking carefully through this mass of evidence we are convinced that justice has been done, that the verdict is not against the weight of evidence, and that there are no tenable exceptions.

Under the law as it stood for a long number of years prior to the passage of the Code of Criminal Procedure, this case would not have come here for review. But in capital cases the Legislature has enacted that the mere filing of a notice of appeal stays the execution of the sentence until its determination. This appeal was taken, and it then was made to appear to this court that the prisoner was so poor as to be unable to print the case and thus to properly present it for review. We became satisfied that such was the fact, and in carrying out the policy of the Legislature to afford a review in all capital cases by the court of last resort, if desired by the convict or his counsel, we ordered the case to be printed at the expense of the county of Rensselaer, and the money to be taken from the

---

* The request was to charge that, " It is the duty of each juror to judge for himself the testimony, and its weight in determining the question of the guilt or innocence of the accused, and it is his duty not to relinquish his own opinion so formed, to the opinion or judgment of any number of his fellows, for the sake of procuring unanimity to get a verdict." The judge refused to charge in that form.

fund to pay the expenses of the courts in such county. This appears to me to have been the only course left open.

We think the appeal entirely without merit, but so long as the policy of the Legislature remains unchanged, it assumes that in all cases, meritorious or otherwise, and whether the criminal is rich or poor, he shall never be made to suffer death until his case, at his own option, has been passed upon by the Court of Appeals. If this policy is to be changed, it is the Legislature that must change it.

The judgment is affirmed and proceedings remitted.

BOCKES, P. J., and LANDON, J., concur.

The following opinion was delivered in the Court of Appeals :

EARL, J.—The defendant was convicted of murder in the first degree, for shooting his wife on July 3, 1884. We have carefully read and examined the evidence and proceeding upon his trial, and are satisfied that he had a fair trial in which all his rights were protected. The whole case was considered at the General Term under section 527 of the Code of Criminal Procedure, and it affirmed the judgment both upon the law and the facts. The able opinion pronounced there furnishes a satisfactory discussion of the most material points now made on behalf of the defendant. And were it not for the serious nature of this case, we would rest our decision upon that opinion. We will, however, briefly notice the main objections to the judgment now made.

Upon the trial, the people were permitted to show the prior relations between the prisoner and his wife ; that he had repeatedly used violence to her person and had threatened to injure her, and to kill her. On one occasion, in August, 1883, a witness testified that she was in a room near to that occupied by the defendant and his wife ; that she heard the prisoner say " damn you," and then heard the report of a pistol, and that his wife came rushing into her room badly frightened and agitated. In the Spring of 1884, while in a room near to that occupied by the defendant and his wife, the same witness heard

again the report of a pistol in that room, and upon entering the room found the wife in bed in a fainting condition. The proof of the pistol shots upon these two occasions was objected to, and we think the objection was properly overruled. There was evidence sufficient to enable the jury to find that the shots were fired by the defendant, either at his wife, or in anger to frighten her. In cases of homicide it has always been held competent to show the conduct and feelings of the prisoner towards his victim, and proof that he had made previous threats or attempts to kill his victim has always been received. 3 *Russell on Crimes* (9th ed.) 288; *Roscoe's Crim. Ev.* (7th ed.) 18; *Wharton on Hom.* (2d ed.) § 693; 2 *Colby's Crim. L.* 193.

Evidence of such facts is received, not because the facts give rise to a presumption of law as to guilt, but because from them, in connection with other circumstances, and proof of the *corpus delicti*, guilt may be inferred. This evidence did not of itself establish the fact that the defendant intended to kill his wife at the time he fired the fatal shot; but it was to be weighed by the jury, in connection with all the facts surrounding the homicide, for the purpose of determining the motive and intent of the defendant at the time.

It is claimed that the court erred in refusing to charge, as requested by the defendant's counsel, "that if the jury find that when the shot in question was fired by the defendant he was acting under the same impulse as when he first struck her (his wife) with his fist on the third day of July, they cannot find the defendant guilty of murder in the first degree." It is difficult to perceive precisely what was meant by the word "impulse" in this request. What was the defendant's impulse when he assaulted his wife just before he shot her? Did he then intend to do her great bodily harm? He may have had the same impulse when he fired the shot, and may yet have fired it for the purpose of giving effect to that impulse. It was for the jury to determined what his impulse or motive was when he assaulted his wife, and with what motive and intent he fired the pistol. It was competent for them to find upon the evidence that the defendant entered upon his work of death at

the time he entered upon the assault of his wife, and that his motive was finally consummated by the shooting.

The defendant's counsel also requested the judge to charge, "that if the jury found the defendant was not acting deliberately but impulsively when he first struck his wife, and that the subsequent striking of Mrs. Harris and the boy Neals was impulsive and not deliberate, then they must take into consideration the defendant's state of mind, which would be consistent with such impulse, when they consider the question of the deliberation of the defendant when he fired the shot." The court said, " Yes, it is a mere play upon words. It seems to me that I have covered the whole ground." Counsel for the defendant excepted to the language, " It is a mere play upon words." The request is obscure in its phraseology, and it is not clear what is meant thereby ; but as we understand it was fully covered by the charge which the judge had already made. The request to charge included ideas which the judge had already presented to the jury in a little different language, and hence it could be truly said that it was a mere play upon words, and it is impossible to perceive how that language could have prejudiced the defendant.

Counsel for the defendant also requested the judge to charge, " That upon the question of deliberation under the facts of this case the jury must not consider the previous threats or attempts to take the life of the deceased which have been sworn to by the witnesses for the people," and the judge refused to so charge, to which refusal defendant's counsel excepted. The previous threats and attempts to take the life of deceased were evidence tending to show that the defendant had long deliberated upon the subject ; that he had conceived the purpose of killing his wife long before July 3 ; and they were competent evidence both upon the question of deliberation and premeditation.

We have carefully scrutinized the other requests to charge, and certain portions of the charge to which our attention has been called, and are clearly of the opinion that no error was committed by the trial judge. His charge was full and fair, covering all the rules of law which the defendant was entitled

to have laid down for the guidance of the jury, and was fully as favorable to him as he had any right to ask.

Our attention is also called to certain rulings upon questions of evidence. But it is so clear that the exceptions to such rulings have no foundation, that we think it is unnecessary to give them particular attention here.

It is claimed that upon all the evidence there was not sufficient proof to establish premeditation and deliberation on the part of the defendant in committing the crime. We think there was abundant evidence upon these subjects for the consideration of the jury. The defendant upon the occasion of the homicide commenced by striking his wife, and finally knocked her down, and while she was down went eighteen and a half feet, took the pistol out of a drawer, and then approached and fired the fatal shot. Taking into consideration his previous treatment of his wife, and all the circumstances surrounding the shooting, it was a question for the jury whether there were premeditation and deliberation.

To show absence of premeditation and deliberation it is not sufficient that the defendant was in a passion or a frenzy at the time. That is only one of the circumstances to be taken into account. A man may deliberate, may premeditate, and intend to kill after premeditation and deliberation, although prompted and to a large extent controlled by passion at the time. All the evidence was open for consideration at the General Term upon this branch of the case, and we cannot say as matter of law that there is no evidence of premeditation and deliberation.

Finding no reason to believe, therefore, that there is any error affecting the judgment, it should be affirmed.

All concur.