Hatch, J.
—The fact that defendant was a married woman, having no separate estate, and engaged in no separate trade or business, does not prevent a recovery for property purchased by her upon her individual credit. The Saratoga County Bank v. Pruyn, 90 N. Y., 250; Tierneyer v. Turnquist, 85 id., 516.
No reason is here found for a reversal of this judgment. *66 Another and more serious question arises in respect to the sufficiency of the evidence upon which the referee based his judgment.
In disposing of this question it becomes necessary to- ■ examine the evidence in detail. The record contains it all, and from it we find that the defendant was a married woman, living with her husband, by whom she was supported, and who was reputed to be a man of wealth. As testified to by plaintiff, Elizabeth Dickinson, the defendant in August, 1877, applied to her for the purchase of jewelry (the plaintiffs being dealers), upon credit, requesting that the goods should be charged to her personally and not to her husband, as it was a strictly private account of her own; that thereafter the defendant continued to deal with the plaintiffs, making purchases of diamonds and other articles, returning certain articles for which she would be-credited upon the account and sometimes exchanging for others.
She also paid cash upon the account from time to time. This dealing continued from 1877, to the 24th day of December, 1880, when the total purchases amounted to $4,765.25, and the total credits to $1,951.50, leaving a balance due of $2,813.75. It was further testified by Albert Dickinson, a bookkeeper and son of the plaintiffs, that he kept the books, and while the record does not show that the books were at any time formally introduced in evidencé, yet enough appears, to show, that they were to all intents and purposes treated as in evidence, and were exhibited to the referee. From the testimony of this witness we may infer that the account, upon the books, was against the defendant, and in her name; he also states, that about the middle of 1880, he made a transcript of defendant’s account from the books, and took it to the residence of defendant; that they there examined it, and defendant directed that certain items be changed, and that certain items of credits should be credited upon an account of an older date, which he says was done, and the bill to that date was balanced. This witness delivered no articles to defendant nor did he see any delivered to her Sabina Fowler, a witness for . plaintiffs, testified, that she was a servant in the employ of defendant for twelve or thirteen years previous to September, 1879, that in the course of her employment she was frequently required by defendant, to go to plaintiffs’ store, and obtain for her different articles of jewelry, which she enumerated, and that she was several times at plaintiffs’ store in company with defendant; that on these occasions defendant stated to Mrs. Dickinson, that she desired the bills for goods purchased, charged to her, and on no condition to be sent to defendant’s husband. That on various occasions *67 she took the bills from plaintiffs to defendant, and looked them over to see that they were correct. Witness was not on friendly terms with defendant when she left her employ. Kate McCroder, who had previously lived as a servant in the family of defendant, testified that she had seen accounts at defendant’s house, between plaintiffs and defendant. On the 3d of December, 1880, Charles Ensign, husband of defendant died. As testified by Elizabeth Dickinson, after his death, and about the middle of January, the defendant in company with Harriet Lay, her sister, visited the store of plaintiffs, when she purchased some articles, and requested that they be charged as of date prior to her husband’s death, which was done. She also requested that her account should be made out against the estate of her husband, so as to be paid by it.
Thomas Dickinson testified that he saw the defendant and her sister in, the store upon the last occasion, but that he did not hear the conversation between defendant and his wife; he also stated that his niece was present, but she was not called as a witness.
This comprises, substantially, all of the testimony upon the part of plaintiffs. Upon the part of defendant, the evidence tended to show that defendant did not trade with plaintiffs as an individual, but solely upon the credit of her husband. Upon the subject of the presentation of the bill, against the estate of her husband, the defendant sharply challenged the truthfulness of Mrs. Dickinson’s statements, and the preponderance of the testimony may be said to be in favor of the defendant upon that point. The record also shows that it was conceded, and proved, that plaintiffs immediately after the death of Charles Ensign, presented the account here sued upon, as an account against his estate, and in the affidavit annexed to the account, each of the plaintiffs made oath that the estate was indebted to them for the whole account and each item thereof. Upon the account they were paid by the executor of the said Ensign the sum of $1,337.38. Subsequently, and in April, 1883, each of the plaintiffs joined in a petition verified by their oaths, in which they set out the account as being against the estate of Charles Ensign; the sum they had been paid thereon; that the estate was good, and prayed for a decree, directing the payment of said claim. Something less than two years later the plaintiff, Elizabeth Dickinson, upon her oath verified the complaint herein, alleging that this account is a debt against the defendant, thus showing that it was never a claim against the estate of Charles Ensign. Upon the trial, she states under oath, that her present position is correct, and necessarily, that her former one was false. The foregoing the record clearly establishes.
*68 There is no pretense of mistake upon the part of the plaintiffs, in the several positions which they have taken, and if such pretense were made, the record would clearly overthrow it.
Upon confession, the plaintiff, Elizabeth Dickinson, is-guilty of having designedly, and consequently corruptly, taken a false oath and committed the crime of perjury. If her first version is correct, as set forth in the account and petition, then her present testimony is false, and she has no-claim against the defendant. If her present testimony be true, then she stands convicted of having.taken a false oath, and thereby, by fraud and perjury, extorted the sum of $1,337.38 from an estate that did not owe her or her husband a penny.
I am strongly of opinion that such testimony should not. be allowed to furnish the basis of support for a judgment, but that it is the duty of the court, in the most solemn manner, to stamp it with the seal of condemnation. Nor does the fact (if it be one) that she was thereunto requested and induced by the defendant to wilfully and corruptly prefer her account against the estate, aid her; if she be willing to take a false oath in aid of a customer, it needs no great stretch of credulity to believe that she would falsify her oath in self-interest.
Courts have not been slow in condemnation of such testimony. In People v. Buddensieck (24 N. Y. Week. Dig., 82) the court held that if the jury came to the conclusion that any witness had wilfully and corruptly sworn to a statement of facts which he knew to be untrue when he swore to it, they-had the right to disregard the evidence of such witness. In People v. Petmecky (2 N. Y. Crim. Rep., 450, 460) the court upheld a charge, “That if the jury should find that the defendant had knowingly testified falsely in respect to a fact material to the case, then his testimony is entitled to credit only so far as the jury shall find it to be consistent, with the established facts of the case or corroborated by the testimony of other witnesses.” In commenting upon this charge the court say: “The authorities in this state-seem to support the proposition that while the question of the credibility of a witness in general belongs to the jury, yet when. they find that he has sworn corruptly false in one material thing, in the case on trial, his uncorroborated testimony is to be disregarded, and it is not error so to instruct them.” In support of this doctrine the court cites:. Dunlop v. Patterson, 5 Cow., 243; Peoples. Evans, 40 N. Y., 1; Deering v. Metcalf, 74 id., 501.
Upon appeal, the court of appeals affirmed the conviction. But the court deemed it not necessary to decide whether a charge which directed the jury to entirely disregard the *69 evidence of a witness shown to have wilfully testified falsely as to a material question could be upheld or not. People v. Petmecky, 99 N. Y., 415; People v. Reavey, 38 Hun, 418, 426.
In Roth v. Wells (29 N. Y., 492) Judge Selden said: “If the witness had committed perjury in his testimony, he was certainly not entitled to be believed upon any doubtful question.”
It is not necessary here to determine whether, from the position in which the plaintiff has placed herself, her whole testimony should be disregarded or diligent effort should be made to find corroborating evidence and give effect to such position.
It is enough to say that her testimony should be carefully scrutinized, and when not satisfactorily corroborated by other witnesses, or the inherent character of the case, should be disregarded and especially is this true when as here she is contradicted upon the main issue. But in reversing this judgment we choose to place it upon another ground. Finch v. Parker (49 N. Y., 1) decides that it is the duty of the general term, when convinced that the decision is not in accordance with the truth, to reverse the judgment for error of fact. This rule has been often adopted. Tyng v. Fields, 3 Hun, 75, 79; Perry v. Lansing, .17 id. 34; 41 Supr. Ct., 11.
Upon the evidence in this case I am not ready to give my sanction to the conclusion of the referee.
The judgment should be reversed for error of fact and a new trial ordered before another referee, costs to abide the event.
Beckwith, Oh. J., concurs; Titus, J., not sitting.