MARY IRENE HOYT, Appellant, *v.* SAMUEL N. HOYT et al., as Executors, etc., Respondents.

*It seems* when a proceeding is instituted to obtain a revocation of probate of a will under the provisions of the Code of Civil Procedure (§§ 2647, 2648), authorizing any person interested in the estate of the decedent to institute such a proceeding within one year after probate, upon petition " containing allegations against the validity of the will or the competency of the proof thereof," although the revocation affects the will only as to the disposition of the personalty, the proceeding is important and useful in facilitating any subsequent controversy over the will as a disposition of the testator's real estate.

After the admission of a will to probate a daughter of the testator presented to the surrogate a petition alleging, in substance, among other things, that prior to and at the time of her father's death she was confined in an insane asylum, although not, in fact, insane; her confinement having been caused by her uncle, the executor named in the will; that she was brought to New York ostensibly to attend her father's funeral, but taken to a hotel instead of to her father's house, and while there was served with a citation to attend the probate, the contents of which she understood, but was kept in custody, taken back to the asylum, kept there until eight days after the probate and was not allowed to attend the hearing in answer to the citation, or to communicate with her friends or counsel and was deprived of all opportunity of asserting her rights. The petition also alleged that at the time of making the will the testator was not of sound mind or memory or capable of making a will, and that it

was procured by fraud and undue influence, by the executors and others in collusion with them. The petition prayed for a decree opening the default taken against the petitioner; also " revoking, vacating and setting aside the letters testamentary * * * and that all the devisees and legatees named in said alleged will and all other persons who were parties to the proceeding, in which probate was granted, be cited to show cause why the default * * * should not be opened * * * and why said probate should not be revoked, vacated and set aside," etc. Upon the hearing the proponents, without objection, opened the case and presented proof, as if upon an original offer of probate, and the contention was in regard to the due execution of the will, the testator's competency and the undue influence, and during the hearing no application was made on behalf of the petitioner that the surrogate should exercise his incidental power. After the hearing the petitioner's counsel requested a finding that the probate of the will was void for want of jurisdiction because of the alleged fraud practiced upon the court and the petitioner. This request was refused on the ground that the proceeding had been treated by all parties as one for the revocation of the will. *Held*, no error; that while the petition presented a two-fold aspect, one authorizing the surrogate to set aside the probate under the provision of the Code fixing the incidental powers of surrogates (§ 2481), because of the alleged fraud, the other under the provisions above referred to, for the revocation of the will because of the incompetency of the testator and the undue influence; that the proceedings upon the hearing showed a waiver on the part of the contestant of all objections by reason of the facts alleged in respect to her treatment by the executors; that the case, therefore, fell within the said provisions in reference to revocation of probate, and this necessarily conceded the jurisdiction of the surrogate to render the original decree, and the contestant could not thereafter raise the question.

*It seems* if the averments in the petition as to the inability of the petitioner to appear because of the forcible detention had been proved, this would not have ousted the surrogate of jurisdiction to admit the will to probate.

*It seems* the said averments, if substantiated by the proofs, would have been ample warrant for the surrogate to open the case and allow the petitioner to come in and contest the probate; but the result would have been the same, as the petitioner has had a rehearing.

The physicians who attended upon the testator were produced by the proponents in compliance with a notice given by the contestant under the Code (§ 2618) requiring their examination. Neither party being willing to examine, the surrogate directed the proponent to do so. To this ruling no objection was made, and they were examined and cross-examined without any objection being taken as to their competency to testify under the Code (§ 834.) Subsequently contestant's counsel moved to strike out their testimony, which motion was denied. *Held*, no error ; that the circumstances showed a waiver of the statutory provision; that

the privilege protecting from disclosing communications by a patient to a physician to be availed of must be claimed, and the proposed evidence seasonably objected to.

Two of said physicians, when so called, were examined by the proponent as to interviews with the testator upon the subject of the contestant's mental incapacity, *held*, no error; that the said provision of the Code did not apply, as they were not communications necessary to enable the witnesses to act in a professional capacity toward the decedent.

(Argued January 24, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 18, 1887, which affirmed a decree of the surrogate of the county of New York refusing to revoke and ratifying and confirming the probate of the will of Jesse Hoyt, deceased.

The material facts are stated in the opinion.

*Benjamin F. Butler* for appellant. Where revocation of a probate is sought on the ground of fraud, the proper form of proceeding is by petition to vacate the former decree as having been obtained by fraud upon the party and imposition on the court. (*Edson* v. *Edson*, 108 Mass. 597; *Walters* v. *Stickney*, 12 Allen, 1; *Cleveland* v. *Quilty*, 128 Mass. 578; *Campbell* v. *Thatcher*, 54 Barb. 382.) The surrogate had no power to act under section 2647 in relation to the realty in a will devising real and personal property, as does the will in question. (*In re Kellum*, 6 Lans. 1; 50 N. Y. 298.) The powers to vacate decrees for fraud, etc., are special powers, and the cases calling for such review in the Surrogate's Court are not remedial in any other method. (*In re Tilden*, 98 N. Y. 434; *In re Hawley*, 100 id. 206; *Pryer* v. *Clapp*, 1 Demarest, 387; *Heilman* v. *Jones*, 5 Redf. 398.) The proceedings being void, and the decree void for excess of jurisdiction, the result to the party cannot affect the question. (*State* v. *Richmond*, 26 N. H. 232; *Tucker* v. *Tucker*, 4 Keyes, 151; *Riggs* v. *Clagg*, 89 N. Y. 479.) There could be no waiver by the appellant or her counsel, of the error of the surrogate in assuming jurisdic-

tion of a subject-matter where he was acting without warrant of law. (*Dudley* v. *Mayhew*, 3 N. Y. 9 ; *Beach* v. *Nixon*, 9 id. 36 ; *Coffin* v. *Tracy*, 3 Caines, 139 ; *Davis* v. *Packard*, 7 Peters, 296 ; *Van Sitlart* v. *Taylor*, 4 E. & B. 918 ; *Avards* v. *Rhodes*, 8 Ex. 312 ; *Dakin* v. *Dakin*, 6 Paige, 95 ; *Tucker* v. *Tucker*, 4 Keyes, 136 ; *Marshalsea Case*, 10 Coke, 76 ; *Brown* v. *Compton*, 8 Term Reports, 431 ; *Starr* v. *Trustees*, 12 Wend. 165 ; *Striker* v. *Mott*, 6 id. 465 ; *Barrett* v. *Crane*, 16 Vt. 246 ; *State* v. *Richmond*, 26 N. H. 232 ; *Harriet* v. *N. J. R. R. Co.*, 2 Hilton, 262 ; *U. S.* v. *Curry*, 6 How. 118 ; *Carroll* v. *Dorsey*, 20 id. 207.) The fraud for which a judgment or decree may be set aside must consist in meditated and intentional contrivance to keep the party in court in ignorance of the real facts in the case and to obtain the judgment by such contrivance, or in facts relating to the manner of obtaining jurisdiction of the cause, to the mode of conducting the trial, or to some concoction of the judgment. (Bigelow's Law of Fraud [ed. 1888] 87, 88 ; *U. S.* v. *Throckmorton*, 98 U. S. 61 ; *Patch* v. *Ward*, L. R., 3 Ch. App. 203 ; *Verplanck* v. *Carpenter*, 76 N. Y. 257 ; *Ward* v. *Town of Southfield*, 102 id. 292 ; *Edson* v. *Edson*, 108 Mass. 597 ; *Moore* v. *Gamble*, 1 Stock. 247 ; *Tompkins* v. *Tompkins*, 3 id 514 ; *Doughty* v. *Doughty*, 27 N. J. Eq. 319 ; *M. Bk.* v. *B. Mfg. Co.*, 33 id. 87 ; *Dunlap* v. *Cody*, 31 Iowa, 260.) Jurisdiction obtained by such means is obtained by fraud, and any decree in a proceeding thereon is an absolute nullity. (*Williams* v. *Bacon*, 10 Wend. 636 ; *Sevier* v. *Robinson*, 3 Duer, 622 ; *Benninghoff* v. *Oswell*, 37 How. Pr. 235 ; *Carpenter* v. *Spooner*, 2 Sandf. 717 ; *Lagrave's Case*, 14 Abb. Pr. [N. S.] 333, 344 ; *Santon* v. *Crosby*, 9 Hun, 371.) Section 2085 of the Code, subdivision 4, provides for a revocation of letters testamentary where the grant thereof was obtained by " false suggestion of a material fact." (*Jackson* v. *Jackson*, 1 Johns. 424 ; *Borden* v. *Fitch*, 15 id. 121 ; *Webster* v. *Reid*, 11 How. 437 ; *Lazier* v. *Westcott*, 26 N. Y. 146 ; *Kinnier* v. *Kinnier*, 45 id. 135, 157 ; *Bradstreet* v. *N. Ins. Co.*, 3 Sum. 600 ; *Burnley* v. *Stephenson*, 24 Ohio St. 474, 480 ; *Wilmer-*

*dings* v. *Fowler*, 14 Abb. Pr. [N. S.] 257.) By obtaining the probate and letters testamentary, and thereby the possession of the estate through the fraud found by the surrogate, the appellant was deprived of her property " without due process of law." (Const., art. 1, § 6; *Happy* v. *Mosher*, 48 N. Y. 317; *Hiller* v. *B. & M. R. R. Co.*, 70 id. 227; *Stuart* v. *Palmer*, 74 id. 188.) The evidence of Dr. Carnochan was prohibited by law. (Code, §§ 834, 836; *Renihan* v. *Dennin*, 103 N. Y. 573.) This error could not be waived. ( *Westover* v. *A. L. Ins. Co.*, 99 N. Y. 56, 66; *Dilleber* v. *H. L. Ins. Co.*, 69 id. 256; *Cohen* v. *C. L. Ins. Co.*, Id. 300; *Edington* v. *M. L. Ins. Co.*, 67 id. 185; *Edington* v. *A. L. Ins. Co.*, 77 id. 564; *Pearson* v. *People*, 79 id. 424; *Grattan* v. *M. L. Ins. Co.*, 80 id. 279.)

*Frank J. Dupignac* and *Edward Winslow Paige* for appellant. It was error of law not to find that the probate of 1882 was fraudulent, and not to vacate it. ( *Carpenter* v. *Spooner*, 2 Sand. 717; *Stern* v. *Valkenhuysen*, E. B. & E. 65; *Ward* v. *Town of Southfield*, 102 N. Y. 287, 292, 293; *U. S.* v. *Throckmorton*, 98 U. S. 61.) The issue having been presented by the pleadings; proved with full proof, claimed by the counsel in summing up and findings having been requested and actually made upon it, was not waived. ( *Day* v. *Town of New Lots*, 107 N. Y. 148, 153; *Neudecker* v. *Kohlberg*, 81 id. 296.) The evidence of the three lawyers and four doctors was all incompetent. ( *Loder* v. *Whelpley*, 18 N. E. Rep. 874.) The question was seasonably raised. ( *Miller* v. *Montgomery*, 78 N. Y. 287; *Loveridge* v. *Hill*, 96 id. 222.) Section 2647 of the Code of Civil Procedure is confined in its application to the probate of wills of personal property solely. ( *In re Kellum*, 50 N. Y. 298, 299; *In re Gouraud*, 95 id. 256, 259, 261; 2 R. S. 61, part 2, chap. 6, tit. 1.) The fraud in securing the probate was in no manner waived. ( *Flora* v. *Carbeau*, 38 N. Y. 111.) If the appellant is responsible for the calling of the first three doctors, that

does not make him responsible for their incompetent evidence. (*Miller* v. *Montgomery*, 78 N. Y. 287.)

*Joseph H. Choate* and *Elihu Root* for respondents. By proceeding to try the question of the validity of the will, the contestant necessarily waived and abandoned all objections to the original probate, except the objection that the will was not valid. (Code § 2652.) Even if the allegations to open the default upon the original probate had been insisted upon and tried, instead of being waived and abandoned, the surrogate's decision refusing to open the default and denying the prayer of the petition in respect thereof would have been a matter of discretion not reviewable in this court. (*Alling* v. *Fahy*, 70 N. Y. 571; *Vanderbilt* v. *Schreyer*, 81 id. 646; *Stephens* v. *Glover*, 83 id. 611.) If there had been no other ground than the failure of the contestant to object when the testimony of the attending physicians was offered, that would have been sufficient. (*Levin* v. *Russel*, 42 N. Y. 251; *Miller* v. *Montgomery*, 78 id. 282; *Ponchas* v. *People*, 82 id. 339; *Loveridge* v. *Hill*, 96 id. 200.) The contestant cannot invoke any consideration of public policy to escape the consequences of her own act in requiring the disclosure of the information acquired by the physicians of Jesse Hoyt. (*Rex* v. *Woodley*, 1 M. & R. 390; *Higgs* v. *Taylor*, 1 C. & K. 85–87; *Marston* v. *Downes*, 1 A. & E. 31; *Egremont* v. *Date*, 11 L. J. [N. S.] Q. B. 220; *Brick* v. *Brick*, 66 N. Y. 144, 156; *Loveridge* v. *Hill*, 96 id. 222, 226; *Westover* v. *A. L. Ins. Co.*, 99 id. 56, 60.) As upon the whole case, irrespective of the evidence objected to by the contestant, the will was overwhelmingly established, the decree must be affirmed. (*Brick* v. *Brick*, 66 N. Y. 144, 156; *In re Ross*, 87 id. 514; *Snyder* v. *Sherman* 88 id. 656; *In re Smith*, 95 id. 516; *Loder* v. *Whelpley*, 18 N. E. Rep. 874.) It is not all information obtained by the physician that is excluded by section 834. Information obtained by the physician, even when in actual attendance on his patient, may be put in evidence, provided the information was not necessary to enable him to

act in that capacity. (*In re Dawagh*, 15 State Rep. 453; *Eddington* v. *Etna Ins. Co.*, 77 N. Y. 564; *People* v. *Schuyler*, 106 id. 302; *In re Baird*, 41 Hun, 94.) If the attending physicians were incompetent to testify to conversations between them and the deceased, the objection should have been raised when the inquiry was made. (*Renihan* v. *Dennin*, 103 N. Y. 573; *Quinn* v. *Lloyd*, 41 id. 353–355; *Lynch* v. *McNally*, 1 Daly, 134; 73 N. Y. 347; *Pontius* v. *People*, 82 id. 348; *Marks* v. *King*, 64 id. 628; *King* v. *Hanley*, 46 Cal. 560; *Miller* v. *Montgomery*, 78 N. Y. 286.) The objection taken to the testimony given by Dr. Willard when recalled cannot be sustained, he having been produced and cross-examined at great length at the request of the contestant. (*McKinney* v. *G. S. R. R. Co.*, 104 N. Y. 355.) The admission of incompetent testimony will not justify a reversal of a decision, if, without such testimony, sufficient facts are established, by legal and competent evidence, to uphold the order or decree appealed from. (*Schenck* v. *Dart*, 22 N. Y. 420, 423; *Brick* v. *Brick*, 66 id. 156; *Horn* v. *Pullman*, 72 id. 278, 279; *Copeland* v. *Van Alst*, 9 Week. Dig. 407; *Snyder* v. *Sherman*, 88 N. Y. 656; *In re Smith*, 95 id. 526, 527; *Loder* v. *Whelpley*, 18 N. E. Rep. 874; *In re Coleman*, 19 N. Y. S. R. 501.) The intention of section 829 of the Code is that the surviving party to the transaction in issue shall not have the unfair advantage of giving his version of the matter, when the other and adverse party is prevented by death from being heard to contradict or explain it. (*Card* v. *Card*, 39 N. Y. 317.) The interest which disqualifies a witness under section 829, must be a present certain vested interest. (1 Greenl. § 390; *McDonough* v. *Laughlin*, 20 Barb. 244, 246; *Reeve* v. *Crosby*, 3 Redf. 77; *In re Heustis*, 22 Week. Dig. 224; *In re Wilson*, 103 N. Y. 376; *Loder* v. *Whelpley*, 18 N. E. Rep. 874; *In re Chase*, 41 Hun, 204.)

GRAY, J. The main question, which has been presented for our consideration by this appeal, is, whether the surrogate was in error in holding that the proceeding, which followed

upon the presentation of the appellant's petition to him, was one for a revocation of probate under the provisions of article 2 of title 3 of chapter 18 of the Code. After the parties had closed their proofs the petitioner's counsel requested that the surrogate should decide and find that the original probate of Jesse Hoyt's will was a nullity by reason of fraud. This he refused to do and decided the matter as one brought under the article referred to. The appellant's counsel have devoted much of their labor and skill to the establishment of propositions in support of their view of the nature of the proceeding. These counsel were not the same who originally advised and appeared for the petitioner, when she presented her petition and instituted the proceedings below, but came into the case at a late stage of its trial.

Before discussing the legal question I shall briefly allude to the facts and to the contents of the petition. Jesse Hoyt, the testator, during his life, had been an active and successful merchant in the city of New York, and when he died, at the age of sixty-eight years, he left a will, disposing of an estate estimated at from six to eight millions of dollars in value. His death occurred at his residence in New York city, on August 14, 1882, and was brought about by a complication of diseases; which, from the month of March, in that year, had compelled him to abandon his business pursuits. In the month of June, after consultations with his lawyers, a will was prepared for and executed by him. The testator left him surviving his widow, Helen Maria Hoyt, and an only child, his daughter, Mary Irene Hoyt, this appellant. Under the provisions of his will, his widow was given the income and revenue proceeding from the sum of $1,250,000, which the executors were to hold as a trust fund during her life. Of this principal sum, she was permitted to dispose of the sum of $750,000 by her last will and testament. For his daughter, testator created a trust fund of the same amount in his executors' hands, the income and revenue from which were to be applied to her use during her life " in the most bounteous and liberal manner as to expenditure, and so as to promote her convenience and comfort and

gratify her reasonable desires." The residue of his estate, after the payment of certain legacies, was disposed of to and among his brothers and sister and the daughter of a deceased brother. After his death and on the 29th day of August, 1882, this will was admitted to probate by the surrogate of the county of New York, and letters testamentary issued thereupon to the executors named therein, viz., his brothers, Alfred M. and Samuel N. Hoyt, and to James W. Jackson, formerly in the employ of the testator as confidential clerk. Jurisdiction was acquired by the surrogate to issue such letters, by the filing of the will in his office, on August 18, 1882, with the petition of the executors, praying that a citation issue to the widow and daughter to attend the probate thereof, etc. The citation was personally served upon them and, upon the return day, there being no opposition made, and upon the proofs, the surrogate adjudged and decreed the will to be valid as a will of both real and personal property, and admitted the same to probate as such. Subsequently, on November 10, 1882, the daughter, Mary Irene Hoyt, presented her petition to the surrogate; in which she alleged the facts as to the probate of her father's will; and further alleged, in substance, that from June 6, 1882, to the day subsequent to her father's death in August, she was confined in an insane asylum in Pennsylvania; that her return to New York was at the instance of her uncles, Alfred M. and Samuel N. Hoyt, and was, ostensibly, to attend her father's funeral; that she was brought to the Windsor Hotel, in New York city, instead of her father's house, and was in the custody of the superintendent of the asylum; that upon her arrival her said uncles informed her that she would not be allowed to attend the funeral; that, nevertheless, she did attend it; that on returning therefrom her uncles informed her she must go back to the asylum, but that she need remain there only three weeks longer; that on the day following the funeral Samuel N. Hoyt came to the hotel and, in his presence, she was served with a citation to attend the probate of her father's will, a printed copy of which was also served upon her; that said Samuel N. Hoyt, at this interview, stated that

she was not insane and, apart from her, as she is informed, requested one of her relatives to induce her to return at once to the asylum and not to see any lawyer; that she read and understood the citation and will; that she was and is not insane; that she was always on terms of affection with her father, and the proceedings referred to were unlawful and ruthless; that on the said day said Samuel N. Hoyt caused her to be again removed to the asylum, in the custody of the superintendent; that she was incarcerated until September 6, 1882, being eight days after the probate of the will; that she was not allowed to communicate with her friends, or anyone outside of said asylum and that her letters were destroyed or intercepted; that she was deprived of all possibility of asserting her rights, or of responding to said citation, or of being present, in person, or by counsel, at the hearing, and her appeals to the superintendent to be allowed to go to New York, for the purpose of answering said citation, were refused; that Alfred M. and Samuel N. Hoyt were large legatees under the will. Her petition further alleged, that Jesse Hoyt, at the time of the making of the said will, was enfeebled by disease, was not of sound mind or memory and was not competent to make a will; that it was not voluntarily made as his last will and testament and that it was obtained and procured by fraud, circumvention and undue influence, practiced upon decedent by said Alfred M. and Samuel N. Hoyt, or one of them, or by other persons colluding with them. The petition further alleged that no opportunity was offered her to require that all the witnesses to the said will, or cognizant thereof, should be produced and examined; or to request that any other witnesses should be examined; or to be present at, or in any manner to contest the proof of the alleged will, that the said Alfred M. and Samuel N. Hoyt caused her removal to and incarceration within the said asylum for the purpose of excluding her from her father and of avoiding any objections being made to the citation, or any contest to the will. The petition prayed for "a decree opening the default taken against petitioner on August 29

1882, and revoking, vacating and setting aside the letters testamentary; * * * and that all the devisees and legatees named in said alleged will and all other persons, who were parties to the proceeding in which said probate was granted, be cited to show cause why the default taken against petitioner * * * should not be opened without costs and petitioner granted an opportunity to contest the will and interpose her objections to said will, and why said probate and letters should not be revoked, vacated and set aside, and why petitioner should not have such other and further relief as may be just," etc.

I have thought best, for the better understanding of the matter, to recite with such fullness from this petition, which lies at the foundation of this great record before us. The appellant's counsel insist that the proceeding, instituted by its presentation to the surrogate, was governed by the provisions of section 2481 of the Code of Civil Procedure, and was not, as the surrogate has found and decided to be the fact, within those of section 2647. They, therefore, claim that, for the surrogate's error as to the nature of the proceeding, his decree is void for want of jurisdiction, and they have endeavored, by oral arguments and in elaborate briefs, to sustain this view. We are not able to accord to their arguments the merit of soundness, however subtle and ingenious the propositions, which they advance in their support.

Section 2481 of the Code is in the chapter on the jurisdiction of the court and the authority of the surrogate, and it gives him power, by subdivision 6, " to open, vacate, modify, or set aside, or to enter as of a former time a decree or order of his court, or to grant a new trial, or a new hearing for fraud, newly-discovered evidence, clerical error, or other sufficient cause," and the power so conferred " must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises such powers."

Section 2647 of the Code provides that " a person interested in the estate of the decedent may, within the time specified in the next section, present to the Surrogate's

Court, in which a will of personal property was proved, a written petition, duly verified, containing allegations against the validity of the will, or the competency of the proof thereof; and praying that the probate thereof may be revoked and that the persons enumerated in the next section but one, may be cited to show cause why it should not be revoked. Upon the presentation of such a petition, the surrogate must issue a citation accordingly." The next section fixes the time within which such a petition must be presented and provides that the section shall not affect an application made pursuant to the sixth subdivision of section 2481, which I have given above. The following section, 2649, provides that the petition "must pray that the citation may be directed to the executor, or administrator with the will annexed; to all the devisees and legatees named in the will, and to all other persons who were parties to the special proceeding in which the probate was granted." Section 2651 provides that, "upon the return of the citation, the surrogate must proceed to hear the allegations and proofs of the parties;" and, by section 2652, if he "decides that the will is not sufficiently proved to be the last will of the testator, or is, for any reason, invalid, he must make a decree revoking the probate thereof; otherwise he must make a decree confirming the probate." With respect to the probate of a will, so far as it relates to personal property, the surrogate's decree is made by the statute conclusive, as an adjudication, until it is reversed on appeal or revoked by him (§ 2626); while, so far as it relates to real property, the decree establishes, presumptively only, all the matters determined by the surrogate, as against a party duly cited or anyone claiming by, through or under that party. (§ 2627.) Therefore it follows, under the statutory provisions, that while, as to real property, the probate of a will is never conclusive and amounts, upon the trial of an action, or in a special proceeding, in which a controversy arises concerning the will, only to presumptive evidence; as to the personal property, if the person interested is not under disability, or

the surrogate's discretion is not invoked for a sufficient cause, under subdivision 6 of section 2481, the probate concludes all mankind after the lapse of one year. In such event, the disposition and distribution of the personalty by the executor are beyond question or recall, and a finality. The proceeding for the probate is in the nature of a proceeding *in rem;* which is binding upon all parties who are entitled to participate and are brought in by due process of law.

The sections of the Code I have referred to, as stating the effect of the probate of wills of real and personal property, and as giving to a person interested in the decedent's estate a specified time after probate, within which to commence proceedings to secure a revocation of that probate, are the re-enactment of former provisions of the Revised Statutes on the subject, and were a legislative recognition of the pre-existing law. (*Matter of Will of Gouraud,* 95 N. Y. 256.)

In the *Matter of the Will of Kellum* (50 N. Y. 298), Judge RAPALLO, delivering the opinion of the court, held, with respect to that section of the Revised Statutes, which gave conclusive effect to the probate of a will of personal property (2 R. S. 61, § 29), that the subsequent provisions, which were adopted, by which the next of kin were permitted, within one year after probate, to contest the same by filing allegations against the validity of the will or the competency of the proof thereof, were " an important safeguard against imposition or mistake and afford the next of kin a whole year after the probate to investigate the circumstances attending the execution of the will." He further said that " no such provisions are necessary as to wills of real estate, as the probate thereof may be repelled at any time by contrary proof."

Article 2 of title 3 of chapter 18 of the Code, in which is contained section 2647, the language of which I have given above in full, was designed to continue to all interested in the estate of the decedent the same opportunity for investigation and contest which existed under the previous provisions of the Revised Statutes. It does not seem to my mind

that it is necessary, for any useful purpose, to hold that that article gives the power to revoke the probate of a will as a will of real estate. Real estate devised by a will vests in the devisee at once, who takes through the will as a conduit of title, and not because of the proceedings for probate in the Surrogate's Court. Their force is directed to the investiture of title in the executor, or the administrator with the will annexed. The title to real estate devised under the provisions of the will of a decedent is open to attack in various modes; and the probate being inconclusive and presumptive evidence only of what the surrogate has determined, upon questions arising in proceedings before him for probate, the party contesting the title is not prejudiced thereby, in any respect, beyond being compelled to meet the production of the surrogate's decree by evidence overthrowing it in establishing the invalidity of the testamentary disposition. But, as to the personal property disposed of by the will, it is evident that without the safeguard created by the statute, in the limitation of a period of time after probate, within which persons interested in the estate are admitted to contest the probate, great prejudice might be worked and irremediable injury suffered.

The effect of the probate of a will as to the personal property is, as I have said, to invest the executor with the legal title thereto, and to give him the legal right to dispose of it, as directed by the testator. It is, therefore, a most valuable right which the Code has secured to the party, in giving him a year to investigate the facts relating to the origin and the making of the will, and, if dissatisfied, and so advised upon the facts collected, to have another hearing on his allegations and proofs. I think the effect of a proceeding instituted under section 2647 is to secure a trial of the matter de novo. The will is to be, in fact, proved anew.

It is obvious that, to the child, or next of kin, or other person interested in the decedent's estate, it may be as important, when he is dissatisfied with the will, or with the proofs upon which it was admitted to probate, to contest its probate as a will of personal property, as it is to contest it as a will of real

property.    But, in the one case, he must institute his proceed-
ing for revocation of probate in the Surrogate's Court within
the year; while, in the other, he has the opportunity to con-
test the will in the other courts for a longer period.    When a
proceeding is instituted under section 2647 to obtain a revoca-
tion of probate of a will, although the revocation affects the
will only as to the disposition of the personal property, the
contestant, if successful, gains an advantage to himself, if he is
interested in the real estate devised, by reason of the fact that
he has collected his proofs, and has tested his case, and has
made the way clear for the trial of any subsequent action
involving the title to the real property.    The institution of
proceedings under section 2647, to secure the revocation of the
probate of a will, as a will of personal property, is as import-
ant in its object, as it is useful in facilitating the subsequent
controversy over the will, as a disposition of the testator's real
property.

The petition in this case presents a two-fold aspect.    It con-
tains allegations, upon which a charge may be based of fraud
practiced on the court and the petitioner, and it contains alle-
gations assailing the validity of the will as a testamentary
disposition by the testator of his property.    Regarded in the
first aspect, as containing charges of fraudulent practices by
the executors, it presented grounds which, if competently
proved, may have warranted the surrogate in deciding to set
aside his prior decree for the fraud.    Regarded in its other
aspect, this petitioner presented to the surrogate charges, with
respect to the will and the competency of the proof thereof,
which, under section 2647 of the Code and the next few fol-
lowing sections, obliged him to hear the allegations and proofs
of the parties and to decide whether to revoke or to confirm
the previous probate.    The petitioner seems to have complied
with the provisions of article 2 of title 3, chapter 18 of the
Code, and to have followed closely the specific directions of
sections 2647, 2649 and 2651 of that article.    She prayed for
a decree opening her default, and that the devisees and legatees
named in the will and all other parties to the probate proceed-

ing be cited to show cause why her default should not be opened and why the probate and letters should not be revoked. A citation did issue thereupon and the parties thus brought into court answered, and issues were presented to the surrogate for his determination.

The petitioner and the defendants were represented in court by counsel, than whom none were more eminent in the profession for ability and learning. With the professional skill and abilities at her command, when these proceedings were commenced before the surrogate, no suggestion will be listened to by us that her rights were not competently understood, or that the course and conduct of the hearing were not intelligently taken and advised. The ingenious after-thoughts of other counsel, who were subsequently engaged by the petitioner upon the retirement of her first counsel and of other counsel succeeding them, will not be suffered to disturb the results reached below, unless some rule of law established by statute, or by the courts, has been violated in reaching them. We should consider the nature of the proceeding as determined by the issues, and the conduct of the trial by the parties; and counsel for the appellant, disappointed in her attempts to disturb the probate of the will, cannot be heard to suggest that the surrogate erred with respect to the nature of the proceeding, or that the petitioner's counsel did not understand her legal rights, because, in looking back over the record, they believe they see other ways of securing a technical revocation of the surrogate's prior decree. Upon the coming on of the hearing, if the petitioner's purpose was to set aside the prior probate of the will for the fraudulent practices alleged, or for any other sufficient cause, the burden was upon her to establish her right to such relief; for it is an invariable rule, applicable to all classes of cases, that whoever alleges fraud must prove it. The onus, therefore, of making out a case for the surrogate to exercise his power, under section 2481, was upon the petitioner. The petition could not prove itself, and until the proofs were adduced in support of its allegations, the prior decree stood intact. But what was done appears from the

record to have been, upon the opening of the case, to prove the will as if upon an original offer for probate, and thereafter a contest ensued between the parties over the testator's competency to make a will, and relating to the question of influence exercised over him with respect to its provisions.

I think the record shows clearly that the proceeding was understood to be the ordinary one for the revocation of a probate, according to the statute. The proponents opened the case and the three subscribing witnesses to the decedent's will were examined by proponents' counsel and cross-examined by contestant's counsel. The proponents then resting, the contestant moved that the proponents be compelled to proceed with the case, on the ground that they had gone beyond the limits of formal proof in probate controversies in opening their case, and asked the court to confine the proponents to rebutting evidence after their proofs should have been submitted. I consider nothing could have more explicitly defined the understanding of the petitioner and of her counsel, as to what was the proceeding. They had not sought to prove the issue of the fraud in the previous proceedings. They had allowed the matter to proceed as upon an original offer of the will for probate, and their remarks foreshadowed the usual will contest, upon objections made as to its validity.

Upon the argument which followed the contestant's motion, the surrogate rendered a written opinion, which defined the questions at issue before him to be three, viz.: Whether the instrument lately admitted to probate as the last will of Jesse Hoyt was duly executed, etc.; whether, at the time of its execution, the decedent was of sound mind and memory; whether it expresses his free and untrammeled testamentary purposes. The opinion discusses the course thus far taken by the proponents and concludes that they had not violated any fixed rule of statute, nor so departed from the ordinary practice, as to warrant the imposition of restrictions upon them, as the contestant had asked for.

To this ruling no exception was taken by the contestant; but she at once gave notice to the executors, under section

.2618 of the Code, that, before introducing proof, she would move the court to require the examination of certain persons named as witnesses therein. Section 2618, so relied on by contestant, provides that " any party who contests the probate of a will may, by notice filed with the surrogate, at any time before the proofs are closed, require the examination of all the subscribing witnesses to a written will, or of any other witness whose testimony the surrogate is satisfied may be material, in which case all such witnesses * * * must be so examined." The surrogate required the proponents to produce the witnesses named in the notice and to examine them; and they were cross-examined by the contestant. The contestant then brought forward her proofs in opposition; the proponents produced further evidence as to testamentary capacity, and the contestant called witnesses in rebuttal of that evidence. The trial proceeded for about three years and a half. At no time during the hearing was any application made by contestant that the surrogate should exercise his incidental power, under subdivision 6 of section 2481, to set aside his previous decree for any sufficient cause appearing in the proofs, and no suggestion to that effect appears until after the hearing had been concluded, when a finding was requested, by the then appearing attorney for the petitioner, that the original probate was void for fraud. The request for this finding was properly refused by the surrogate; who found that the petition had been treated and proceeded under by the court, without objection by either party, substantially as a petition for revocation of probate under section 2647 of the Code.

We think the surrogate has committed no error in so finding. The contestant had abandoned her objections to the original probate. She waived all objections which she might have to the first probate, by reason of the facts alleged in her petition with respect to her treatment by the executors, at the time the citation issued upon their petition for the probate of the will. She waived them by suffering the case to proceed as one for the establishment of the due execution and of the validity of the will by the proponents; and by insisting upon

their proceeding with the case as one for the contest of the validity of the will. Having abandoned and waived the issues raised by the allegations of fraudulent practices in her petition, the petitioner's case fell within section 2647 of the Code, and gave jurisdiction to the surrogate to reconsider and determine, upon the further proofs adduced, whether he should revoke or confirm the original probate. I agree with the learned counsel for the respondents here, that the trial, upon allegations to revoke under the statute, necessarily assumes an original probate to be valid, if the will is valid. By reason of the proceedings before the surrogate, the contest proceeded upon the allegations of the invalidity of the will and a determination by him in favor of the proponents, of necessity, compelled him to make a decree confirming the probate. Such is the requirement of section 2652. It would be a flaw in the administration of justice and one which, I think, is not found to exist, in reason, or from the closest inspection of these provisions of the Code, if when issues, preliminary in their nature, are not only not proceeded with, but are waived by going to trial upon the merits of the controversy, the contestant, after failing thereupon, may claim the right to resort to the other issues. The contestant, like any party to an action, could have raised, *in limine*, the question of jurisdiction to render the previous adjudication; but it was perfectly competent for her to waive a question of jurisdiction, which, the due service of process being admitted, turned upon the effect of an alleged duress exercised upon her person, and to proceed with the opportunity afforded her to contest the probate *de novo*.

We hold that the course adopted and followed by her upon the hearing was incompatible with the existence of a right thereafter to assert, or to insist upon the want of jurisdiction in the surrogate to render the prior decree of probate. The proceeding taken below was, within the terms and purview of section 2647, for the revocation of a will of personal property, and was so recognized by all parties. The effect of presenting the petition was to procure a re-examination of the case and to have the proofs taken *de novo*. The executors, as pro-

ponents, proceeded to prove the will by original proof, independently of the first proof, and the practice was right and such as is contemplated by section 2651. That section was a re-enactment of a provision of the Revised Statutes (2 R. S. 61, § 28) and necessarily implies that the only evidence, which need not be taken anew, is in the case of witnesses dead, without the state, or insane.

In a previous part of my opinion, I said that the allegations in the petition of fraudulent practices by the executors upon the petitioner, if competently proved, *may* have warranted the surrogate in setting aside his prior decree for the fraud. I advisedly said "may," because I am not convinced that in this petition sufficient appears to warrant a finding, if all the allegations had been sustained by proofs and had been believed to be true, that the surrogate was ousted of his jurisdiction to render the decree. The service of the citation upon the executor's petition is admitted by petitioner to have been made upon her, and she alleged her mental competency and understanding of· the import of the papers. I think it is not so clear that, standing on such admissions, she can· say more than that she was deprived of the opportunity of being heard on the return of the process and upon her objections to the will. In fact, I think that is all she actually does set up in the petition.

The allegations with respect to her treatment, if substantiated by the proofs, would be the most ample warrant to the surrogate, whose process had been so interfered with, to open up again the case for the reception of the proofs offered by the petitioner. Clearly, under his incidental powers, at any time, on such a showing, he could do that much. But that is quite another matter from what the appellant's counsel argue to be the effect of proof under the allegations respecting the fraudulent conduct of the executors. The surrogate would not be ousted of jurisdiction to admit the will to probate, because of the inability of a person to appear, if served with process; whether such inability be the result of physical disability, or of forcible detention. In either case, the service of the citation gave the right to entertain the proceeding as to

the party cited; but, for the failure, to be heard therein, the surrogate is empowered to grant relief by a rehearing. It is, of course, unnecessary to decide as to the effect of a course of proceeding, which would result in establishing the truth of the allegations as to the treatment of the petitioner, because we have agreed with the courts below in holding that such a course was abandoned and such an issue was waived. But I think that view suggests this consideration, namely, that the surrogate's jurisdiction to render the decree, being unassailed by the allegations of the petition, had the parties gone to their proofs, on the preliminary question of petitioner's treatment and her inability to appear on the proceedings for probate, the result would have been the same if she had succeeded; for the surrogate must have given her the opportunity to come in and be heard. Hence, what has been done in this case is the accomplishment of what, to me, seems the plain object of this petition as presented to the surrogate. Although jurisdiction is conferred upon the surrogate by the statute, his exercise of power, when not controlled by the statute, must be regulated by a sound discretion according to the circumstances of the case.

In this case we find no mistaken exercise of jurisdiction, or any abuse of discretion in the conduct of the trial.

The appellant claims that the surrogate has committed error in the reception of testimony of the physicians, who attended upon the testator. They were three in number and were produced by proponents, under the notice heretofore referred to as having been given under section 2618 of the Code. That notice was given to proponents by the contestant, upon an affidavit of one of her counsel intended to satisfy the surrogate as to the materiality of the evidence desired. The affidavit showed that the three witnesses named were, during the decedent's last illness, his only attending physicians. The surrogate ruled that the proponents should produce them under this statutory notice, and, when contestant and proponents were unwilling to examine them, he directed the proponent's counsel to examine them, accordingly as the inquiry

might be "suggested by their knowledge of the fact that the witness was an attending physician upon the decedent in the latter part of his life"   To this ruling contestant did not object or except.   The three witnesses were examined and cross-examined at very great length, without any objection being taken as to their competency to give evidence, under section 834 of the Code.   Some time after these witnesses had been examined in the case, however, the counsel then appearing for contestant raised the question, by a motion to strike out their evidence and, upon its denial, excepted.   The denial of the motion by the surrogate was proper, and the exception brings up no error. The examination of the physicians was demanded and insisted upon by the contestant as material to the case, under her notice; though the materiality of their evidence could only be because of their professional relations to the decedent and the knowledge they must thereby have gained.   So much we are bound to assume from the statements of the affidavits upon which the notice was based.   This fact, together with the failure to object either to the ruling of the surrogate, with respect to the limits of their examination, or to the examination of the witnesses themselves, constituted a waiver of the statutory provisions.   The contestant could not sit by during the examination of the physicians, and, after their evidence had been elicited by examination and cross-examination, upon finding it injurious to her case, claim as a legal right to have it stricken out.   There are bounds to the enforcement of the statutory provisions, which will not be disregarded at the instance of a party who, being entitled to their benefit, has waived or omitted to avail himself of them.   It is perfectly true that public policy has dictated the enactment of the Code provisions, by which the communications of patient and client are privileged from disclosure; but the privilege must be claimed and the proposed evidence must be seasonably objected to.   The rule of evidence, which excludes the communications between physician and patient, must be invoked by an objection at the time the evidence of the witness is given.   It is too late, after the examination has been insisted upon and the

evidence has been received without objection, to raise the question of competency by a motion to strike it out.

In *Westover* v. *Ætna Life Insurance Company* (99 N. Y. 60), EARL, J., stated the rule as to privileged communications thus, after reviewing the authorities: "We think the statute admits of no other construction than that where the evidence comes within the prohibition of the statute, its reception, if objected to, can be justified only when the patient, penitent or client, as the case may be, waives the protection the statutes give him." We do not think that the rule of the statute goes further than to stamp such communications as confidential, and to protect them from disclosure, when objected to; unless the privilege has been competently waived. The rule does not prohibit the examination of such classes of witnesses; but it prohibits the evidence of the character described from being given in the face of an objection.

Nor was the testimony of the physicians Millard and Talcott, when they were called by the proponents to give evidence as to interviews with testator, upon the subject of his daughter's mental condition, incompetent. Section 834 does not apply to such evidence. The information derived from the testator by the witnesses on that head was not of the nature described by the statute. It was not such as was necessary to enable the witnesses to act in a professional capacity towards the decedent. Dr. Millard had acted as a medical adviser to Miss Hoyt, previously to his attendance upon the testator, and Dr. Talcott had examined her with a view to forming an opinion of her sanity. The examination of both, however, was for the purpose of procuring evidence of testator's opinion concerning his daughter's mental condition, and not to obtain the witness' opinion of her condition, as derived from a professional attendance upon her, at her instance. In Dr. Millard's examination the surrogate carefully cautioned him that he was not to give his opinion as to Miss Hoyt's condition, but was to confine himself to a narration of what took place between himself and testator.

Dr. Talcott examined her with a view to her confinement

in his asylum at Middletown, at testator's request, conveyed through Dr. Millard, the Hoyt's family physician. The sentiments or opinion of the testator concerning his daughter were a live issue in the case, in view of his testamentary provisions in her behalf, which was raised by the petition and answers. Therefore, what those sentiments were, how inspired and how well or reasonably based, were proper subjects for inquiry from witnesses, who could testify from the testator's own statements to them, and who themselves had been requested to advise him of their views as to his daughter's condition and the proper treatment of her by him.

We think no other questions demand our attention or require other consideration than that received at the General Term.

The findings of the surrogate are supported by the evidence; and his conclusions that the instrument offered for and admitted to probate, on August 29, 1882, was duly executed; that it was sufficiently proved to be the last will of the testator and was valid, and that he, at the time of its execution, was in all respects competent to make a will and was not under restraint, were inevitable from the proofs; even if they had to rest exclusively upon the evidence of the subscribing witnesses to the will, the associates in business of the testator, Leonard and Joseph Hazeltine, and the civil engineer Kirby, who was so long in his employ.

The careful investigation of the questions raised upon the trial of the issues, which was made by the surrogate, and the able review of the case at General Term leave but little for us to do beyond the consideration of the points we have discussed. The examination of this lengthy record has led me to advise agreement in the conclusion of the opinion at General Term, that, at the time of the execution of his will, Jesse Hoyt was of sound mind and memory, and that such will expressed his free, untrammeled testamentary purpose. The evidence abundantly sustained this conclusion. In his long and active career, Jesse Hoyt seemed to be endowed with a strong will and with extraordinary mental capacity to conceive, organize and

execute great business schemes.   When stricken down, a few months before his death, by a complication of physical ailments and tried to the utmost limits of forbearance and endurance by the violent conduct and language of his only daughter, he still acted with a tender consideration for her unfortunate condition, and with a clear and undimmed intellect he made a final testamentary disposition of his great possessions.   Were it the province of courts to pronounce their opinion upon the justice and propriety of those dispositions, I should unhesitatingly say that, in this case, they are characterized by a judicious consideration of the circumstances and of the testator's surroundings.   They evidence an understanding of the best interests of his daughter, and are marked by no illiberality or want of regard for her.

The judgment appealed from should be affirmed, with costs to the respondents, to be paid by the appellant.

All concur.

Judgment affirmed.