[No. 10400. Department One. July 16, 1912.]

DEXTER HORTON NATIONAL BANK OF SEATTLE, *Appellant*, v. DAVID McKENZIE et al., *Respondents.*[1]

TAXATION—ASSESSMENT—NATIONAL BANK STOCK—DEDUCTION—REAL PROPERTY—WHAT CONSTITUTES—BUILDING INVESTMENT BONDS. Business property investment bonds held by a national ·bank àre real estate, within the meaning of Rem. & Bal. Code, § 9134, requiring the deduction from the assessed value of national bank stock of the assessed value of the real estate belonging to the bank, where such bonds, issued by a trust company in a sum equal to .the alleged value of a specified tract of land, each represented and conveyed to the holder, one of the "units" in the land created by a deed of trust, under a scheme devised by the trust company to enable persons to invest small amounts in high priced business property, the trust deed requiring the trust company to pay over to the bondholders certain profits and surplus dividends, together with a share of the net income, and finally to sell the property and distribute the proceeds among the bondholders, the only interest in the land retained by the trust company being a prospective right to share in the net income and in the surplus in the ultimate sale price above the face value of the bonds; especially in view of the presumption against a legislative intent to authorize double taxation impliedly pro-

[1]Reported in 124 Pac. 915.

hibited by Const., art. 7, § 2, and in view of Rem. & Bal. Code, § 9092, defining real property for the purposes of taxation to include all rights and privileges thereto belonging or in any way appertaining.

SAME—REAL ESTATE HELD BY BANK—PRESUMPTIONS. In the absence of any showing, it will be presumed that a national bank legally acquired its real estate the assessed value of which it seeks to have deducted from the assessed value of its capital stock.

APPEAL—DECISION—REMAND. Where, upon reversing the action of the board of equalization in refusing to deduct the assessed value of real estate from the assessed value of national bank stock, the board has adjourned and been dissolved, and the county treasurer has the tax rolls, the supreme court will order the clerical correction of the rolls, where nothing else is required to protect appellant's rights.

Appeal from a judgment of the superior court for King county, Myers, J., entered April 8, 1912, affirming the action of the board of equalization in refusing to reduce an assessment, after a hearing on certiorari. Reversed.

*Peters & Powell*, for appellant.

*John F. Murphy* and *M. H. Ingersoll*, for respondents.

PARKER, J.—The Dexter Horton National Bank, of Seattle, deeming itself aggrieved by the action of the board of equalization for King county, for the year 1911, in denying its application to reduce the assessment of that year, made by the county assessor upon its shares of capital stock by deducting therefrom the assessed value of real estate claimed to be owned by it, sought by writ of certiorari to have the action of the board of equalization reviewed and corrected by the superior court for King county. Upon the return of the writ, a trial was had in that court, resulting in a judgment denying the relief prayed for by the bank, and affirming the action of the board of equalization. From that judgment, the bank has appealed to this court.

The principal question here involved is, Is the property, the assessed value of which appellant seeks to have deducted from the value of its capital stock for purposes of taxation,

real estate within the meaning of § 9134, Rem. & Bal. Code, which provides as follows:

"All the shares of stock in banks whether of issue or not, existing by authority of the United States or of the state, and located within the state, shall be assessed to the owners thereof in the cities or towns, where such banks are located, and not elsewhere, in the assessment of all state, county and municipal taxes imposed and levied in such place whether such owner is a resident of said city or town or not; all such shares shall be assessed at their full and fair value in money on the first day of March in each year, first deducting therefrom the proportionate part of the assessed value of the real estate belonging to the bank."

In view of the fact that, under our system of taxation, real estate belonging to banks is assessed and taxed separate and apart from their other property, just as real estate is assessed and taxed when belonging to other persons or corporations, it is manifest that the purpose of this law is to avoid what would be in effect double taxation of their real estate, by deducting the value of such real estate from the value of their other property when estimating the value of their capital stock for the purpose of taxation, since the taxing of the property of a corporation and the taxing of its capital stock in addition thereto would be in effect double taxation. *Lewiston Water & Power Co. v. Asotin County*, 24 Wash. 371, 64 Pac. 544; *Stroh v. Detroit*, 131 Mich. 109, 90 N. W. 1029.

From the provisions of Rem. & Bal. Code, § 9134, above quoted, and of § 9133, preceding, relating to the assessment of corporate property, it would seem that the assessing of the capital stock of banks in this manner is intended to be in lieu of taxation upon their personal property, in view of the legal presumption of legislative intent to avoid double taxation. However that may be as to state banks, the state has no power to tax national banks except to tax their real estate and their shares of stock, this being the only concession made by the national government to the states upon that subject.

37 Cyc. 830; *Owensboro Nat. Bank v. Owensboro,* 173 U. S. 664; *Pullman State Bank v. Manring,* 18 Wash. 250, 51 Pac. 464.

The material facts bearing upon the question of the nature of the property owned by appellant, and claimed by it to be real property, the assessed value of which it claims should be deducted from the value of its capital stock, are not in dispute, and may be summarized as follows: The Trustee Company, a domestic corporation of Seattle, has devised a plan of investment in real estate by which persons may invest small amounts in high priced business property. This plan and the rights of investors thereunder are evidenced by a deed of trust, made by the trustee company to the Washington Trust Company of Seattle, a domestic corporation, conveying to that company in trust, lot 5, in block 1, of David S. Maynard's plat of Seattle; and also by certain instruments of writing, the form of which is prescribed by the terms of the trust deed, called "Business Property Investment Bonds," issued and delivered by the trustee company to the investors as evidence of their rights under the trust deed. It so happens that appellant is the sole owner of all of these so-called investment bonds, which represent the entire investment in the trust property. This fact is probably not material to the principle here involved, but will be found material to the question of the assessable value of appellant's interest in the trust property. Whether or not the interest of appellant in that property thus represented is real estate, within the meaning of the revenue statute above quoted, is the main problem for our solution here. The trust deed specifies in considerable detail the respective obligations and rights of the Washington Trust Company, the Trustee Company, and the prospective investors. The following provisions thereof, we think, will sufficiently show the nature of those obligations and rights to enable us to determine whether the interest of appellant in the trust property is real or personal for the purpose of taxation.

"The Trustee Company, being the owner of the hereinafter described real estate, hereby conveys said real estate, makes disposition and reservations, binds itself by covenants, declares and imposes trusts, and saves and grants rights, interests and powers as follows, that is to say:

"In consideration of the sum of One Dollar ($1.00) and for the purpose of creating a Trust to sell the property hereinafter described and apply the proceeds in accordance with this Deed of Trust, and for the purpose of creating Units to represent income and proceeds of said property as herein set forth, and for the purpose of securing the performance and accomplishment of all and singular the things mentioned herein to be done or accomplished as herein set forth, The Trustee Company does by these presents grant, bargain, sell, convey and confirm unto the Washington Trust Company and to its successors and assigns, in trust, the following described real estate, . . . said property being also designated as Trustee Property No. 5, . . .

"The Trustee Company does by this Deed of Trust create two hundred and fifty (250) equal Units in said property representing income and proceeds thereof as herein set forth, and has, under this Deed of Trust, duly issued, and the Washington Trust Company has duly certified two hundred and fifty (250) Business Property Investment-Bonds, each representing one of said Units, which Investment-Bonds bear even date herewith (with coupons attached thereto, covering a period of five years from this date), which Investment-Bonds and coupons are substantially in the following terms, to wit:

" 'State of Washington.   Investment Bond.   No.———

" 'The Trustee Company Business Property Investment-Bond.

" 'Trustee Property No. 5.

" 'Total Number of Units Outstanding 250.

" 'The Trustee Company, for value received, hereby sells and conveys to the holder hereof one of the Units created by the hereinafter mentioned deed of trust in the following property and appurtenances thereof, to wit:  . . .

" 'The Trustee Company hereby agrees to collect and pay over, to the holder hereof, the rental dividends accruing from said property to said Unit under the terms of said deed of trust, to wit:

" '1st.   Quarterly Dividends out of net income up to Fifty Dollars per annum per unit . . . .

" '2nd.   Annual Surplus Dividends consisting of its portion of net income in excess of such quarterly dividends, . . .

" 'The holder hereof is also entitled to receive net proceeds of final sale of said property up to One Thousand Dollars ($1,000) for the Unit represented hereby, and also its proportion of surplus proceeds as set forth in said deed of trust. . . . .

" 'This Investment-Bond shall pass by delivery unless it has been registered in the name of the holder by entry in the books of The Trustee Company or of a duly qualified registry agent and by authorized notation hereon. . . . .

" 'The Trustee Company further agrees to manage and care for said property, to keep accounts, to make reports thereon and to perform other duties as set forth in said deed of trust.

" 'In Witness Whereof, The Trustee Company has caused this Investment-Bond to be signed by its President, attested by its Secretary, and its corporate seal to be hereto affixed, . . . .

" 'The Trustee Company, by ———————— President.
" 'Attest:              ———————— Secretary.'
. . . . . . . .

"It [Trustee Company] will collect all rents and earnings of said property and distribute and pay the same as received by it, for each fiscal year ending November 30th, in the following order of priority, to wit:

"(a)   In payment of insurance, taxes, special assessments, operating expenses and repairs.

"(b)   In payment of dividends up to $12.50 per quarter on each Unit outstanding hereunder, . . . .

"(c)   All net income remaining after the above payments are made to be distributed on the 10th day of December of each year as a surplus dividend, as follows:

"Two-thirds (2-3) thereof to the Owners of the Units then outstanding, pro rata, and the other one-third (1-3) to The Trustee Company. . . . .

"The term 'Operating Expenses' in this instrument shall not include any compensation to The Trustee Company for its services. . . . .

"The owners of registered Investment-Bonds representing

not less than 67 per cent of the Units then outstanding here-under, may at any time direct the Washington Trust Company and The Trustee Company to sell said property . . . .

"This Deed of Trust is made and accepted as a paramount trust and requirement that (unless said property shall have been sooner sold and conveyed as above provided) The Washington Trust Company must sell the property as an entirety in one lot or parcel prior to the termination of the existence of The Trustee Company, but not more than one year prior thereto, for such price, upon such terms and in such manner as said Washington Trust Company shall deem best, such powers to be exercised by the Washington Trust Company alone. . . . .

"The proceeds of any sale hereunder shall be by the Washington Trust Company distributed upon the written order of The Trustee Company in the following order of priority, to wit:

"(a)    In payment of unpaid taxes, operating expenses and charges upon said property, if any, and the expenses of sale and conveyance;

"(b)    In payment pro rata upon all Investment-Bonds outstanding hereunder, up to $1,000 per Unit;

"(c)    All of such proceeds remaining after the above payments have been made, to be distributed as an increase-value dividend, as follows: Two-thirds (2-3) thereof to the Investment-Bond Owners pro rata, and the other one-third (1-3) thereof to The Trustee Company. . . . .

"The owners of registered Investment-Bonds, representing not less than 75 per cent of the Units at any time outstanding hereunder, may, at their option, remove the Washington Trust Company and appoint a successor as follows: . . . .

"The owners of registered Investment-Bonds, representing not less than 67 per cent of the Units at any time outstanding hereunder may, at their option, remove The Trustee Company and appoint a successor as follows: . . . ."

It is manifest from these provisions of the trust deed that this joint enterprise has to do with nothing whatever but the owning, managing, receiving the income from, and eventually selling, this particular piece of real estate; first, to the profit of the owners of the units; and second, to the profit of the Trustee Company; the interest of the latter being only a

prospective interest in surplus dividends and surplus in the ultimate sale price above $250,000. This constitutes the entire business of the enterprise. The interest of the unit owners is not something apart from an interest in or ownership of the property itself, like that of a stockholder in a corporation. They have an interest in this particular piece of real estate, which constitutes the whole value of the units held by the investors. The very words of the so-called investment bonds conveys to the holder, "one of the units created by the . . . . deed of trust in the following property and appurtenances thereto," followed by a specific description of this real estate. The owners of 67 per cent of the units have power to direct a sale of the property, cause distribution of the proceeds, and bring the trust to an end. The owners of 75 per cent of the units have power to remove the Washington Trust Company as trustee. And 67 per cent of the owners of the units have power to remove the Trustee Company from the management of the property.

We have already noticed that the assessment and taxation of this trust real property and the taxing of the units as personal property in the hands of their owners would be, in effect, double taxation. It is of course manifest that, if appellant cannot secure the reduction of the assessed value of its capital stock by having deducted therefrom the assessed value of the units it owns in this trust property, the effect will be the same as a taxing of both the real property and those units separately, and result in double taxation. While this court has held that duplicate or double taxation will not of itself render such taxation void as being in conflict with our constitution (*Pacific Nat. Bank v. Pierce County*, 20 Wash. 675, 56 Pac. 936), yet the rule has been recognized and followed by this court, which seems to be universal, that the legislative intent to authorize double taxation must plainly appear before it will be permitted by the courts. The manifest injustice of such taxation, in view of the fact that

11—69 WASH.

our system is based upon taxation of property in proportion to value, and in view of our constitutional requirement of uniform taxation, furnishes unusually strong reasons in this state for our holding to this rule of presumption against legislative intent to authorize double taxation. *Ridpath v. Spokane County*, 23 Wash. 436, 63 Pac. 261; *Lewiston Water & Power Co. v. Asotin County*, 24 Wash. 371, 64 Pac. 544; *State ex rel. Wolfe v. Parmenter*, 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707.

In the text of 27 Am. & Eng. Ency. Law (2d ed.), p. 948, the rule is stated thus:

"Double taxation is never to be presumed. Justice requires that the burdens of government shall, as far as is practicable, be laid equally on all, and if property is taxed once in one way it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect, but if they do it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition."

This is quite in keeping with the spirit of our constitution, which provides in art. 7, § 2, "The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, . . . ." This is but little short of a prohibition against double or duplicate taxation. It is, at least, an admonition by the people to the legislature to avoid such taxation as far as possible, which we must presume the legislature has done. Our revenue laws define real property for the purpose of taxation in Rem. & Bal. Code, § 9092, as follows:

"Real property for the purposes of taxation shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind, thereon, and all rights and privileges thereto belonging, or in anywise appertaining, . . . ."

We cannot escape the conclusion that the units representing interests in this trust property under the terms of this

deed of trust constitute "rights and privileges thereto belonging" and "appertaining," using the language of § 9092. It follows that appellant is entitled to have deducted from the total value of its capital stock the assessed value of its interest represented by the units held by it in the trust real estate, that real estate having been already separately taxed.

By the conceded facts, it is not difficult to determine the assessed value of appellant's interest in the trust real estate. We have seen that appellant happens to own all of the units representing the entire trust property. That property was assessed at $120,150, and of course taxes, by this time, have either been paid or will have to be paid upon that property computed upon that assessment. It is suggested that the trustee company also has an interest in the trust property of a similar nature to that of appellant, and that this may lessen appellant's interest therein. A time may come when this will be true; but it appears from the trust deed, as we have seen, that the interests of the trustee company is junior and inferior to that of appellant as owner of the units, and that the trustee company has only a prospective interest in the possible surplus of the future sale of the property if sold for more than $250,000; since the owners of 250 units are first to receive the proceeds of such sale up to $1,000 per unit. Assuming that the assessed value of $120,150 put upon the trust property by the assessor was fair, it is manifest that the value of that property has not yet reached the point where it can be said that the present interest of the trustee company therein is of any value. It is not claimed that the net income therefrom produces any surplus in dividends which the trustee company would be entitled to beyond what the unit owner, the appellant at this time, is entitled to; so the trustee company apparently has no present interest by reason of surplus dividends. Of course, when we refer to present interest, we mean as of the date of the making of the assessment; since the conditions then existing are determinative of this controversy. The capital stock of appellant was

assessed at $622,800 without any deduction therefrom on account of real estate owned by it. We conclude that appellant was entitled to have deducted from that assessed valuation the $120,150 assessed as the value of trust real property here involved, leaving the assessable value of appellant's capital stock at $502,650; and to have the taxes computed upon its capital stock accordingly. This will result in the payment of taxes upon all of appellant's assessable property, including its capital stock, and avoids double taxation. Neither the law nor the commonly recognized principles of fair dealing demands more than this.

Counsel for respondents place their principal reliance upon the decision *In re Jones' Estate,* 172 N. Y. 575, 65 N. E. 570, where it was held that shares of stock in a joint stock association were taxable as personal property under the laws of New York. We think, however, that a careful reading of that and other New York decisions will show that, under the statute law of New York, joint stock associations are much nearer akin to corporations than the trust here involved is, under the laws of this state. Our attention has not been called to any statute law in this state defining the legal status of such associations, and we know of no such statute law. We are unable to see that the interests of the unit owners, the beneficiaries under this trust, appellant being such sole beneficiary, are taxable in addition to the real property constituting the only real value represented by such units, any more than that any other limited interest or estate in land is taxable in addition to that tax, which is, under our system of taxation, put upon the land regardless of its ownership, and enforced by a proceeding which is in substance a proceeding *in rem,* and which looks only to the land itself for payment of the tax.

Some reference is made in the briefs to the supposed manner of the acquisition of these units by appellant, and it is suggested that the right of appellant under the law to hold real estate is in a measure limited. The record is silent as

to how the appellant acquired this interest in the trust property. Hence, we must presume that it acquired it and is holding it legally; so we give no attention to the powers and rights of appellant in that regard.

Since our conclusion calls for a reversal of the trial court, and since the board of equalization of King county for the year 1911 has long since adjourned and been dissolved by operation of law, and the tax rolls have been made up and placed in the hands of the county treasurer for collection pending this controversy, it becomes necessary for us to make such directions as will render a proper judgment effective in protecting the rights of appellant in conformity with the views expressed in this opinion. This is in effect a controversy between King county and appellant. The board of equalization for 1911 was but the representative of the county, and the county treasurer now has the tax rolls in his possession for collection as the county's representative. It is also apparent from the undisputed facts here involved that, in the protection of appellant's rights, nothing is required now but the mere clerical correction of the tax rolls in conformity with the views herein expressed. We therefore reverse the judgment of the superior court, and direct that the treasurer of King county receive from appellant in full payment of the tax upon its capital stock a sum to be computed upon an assessed valuation of $502,650.

CROW, GOSE, and CHADWICK, JJ., concur.