JOSEPHINE E. STOWELL, Respondent, *v.* THE AMERICAN CO-OPERATIVE RELIEF ASSOCIATION, Appellant.

*N. Y. Supreme Court, Fourth Department, General Term, May 12, 1889.*

1. *New trial.*—A new trial will not be granted on the ground that the verdict is against the weight of evidence, where the testimony is contradictory. It is only where the verdict is so clearly against the weight of evidence as to furnish proof that the jury were influenced by passion, prejudice or mistake, that it should be set aside.
2. *Question of fact.*—The question whether a receipt in full for a claim under an insurance certificate was obtained by duress, is a question of fact upon conflicting evidence, and properly submitted to the jury.

3. *Insurance. Recovery.*—In an action on an insurance certificate, a recovery for the amount of one full assessment is not excessive, though a by-law adopted subsequent to the issuing of the certificate, provides for a payment of only five-sixths of that amount.

4. *Evidence. Section* 834.—The burden of proof is upon a party, who seeks to exclude testimony under section 834 of the Code, to show, if it does not otherwise appear, that the information is such as the witness acquired in attending the patient in a professional capacity not only, but he must also show that it was such as was necessary to enable him to act in that capacity.

See note at end of this case.

Appeal from a judgment entered on a verdict, and from an order dening a motion for a new trial on the minutes.

The action was brought on a certificate of membership issued by the defendant association, which certified that Oscar Bishop was a member of such association, and that the plaintiff, her heirs and assigns, would be entitled, upon his death, to the proceeds of one full assessment upon the members of said association according to its by-laws and regulations, not exceeding three thousand dollars, provided such members should have paid all dues and assessments, and complied with all the requirements of such associations and provided the statements and declarations made by him in his application and physician's examination should be found correct and true; otherwise the certificate should be void, and all payments made by such member should be forfeited to the defendant.

The application and physician's examination, which were signed by said Bishop, contained the following questions and answers: "11. Are the functions of the abdominal and urinary organs in healthy condition? Yes. * *. * 23. Is the general appearance that of health and vigor? Yes. Has the person proposed ever had any of the following diseases? State full particulars. * * * Disease of the urinary organs? No."

Bishop died January, 1884, and due proofs of his death were furnished to the defendant. The plaintiff was his daughter.

The answer contained denials of a portion of the allegations of the complaint, and then alleged that such certificate was obtained by fraud; that the representations in such application that the functions of the decedent's abdominal and urinary organs were in healthy condition, that he never had any disease of the urinary organs, and that he was generally healthy and vigorous, were false and untrue; that they were made with an intent to mislead and deceive the defendant, and induce it to accept him as a member of the defendant association.

It was also alleged that after the death of said Bishop, and before the commencement of this action, the defendant paid the plaintiff $500, in full satisfaction and settlement of all claims which the plaintiff had against the defendant, under or by reason of such certificate, and that that sum was accepted by the plaintiff in full satisfaction and settlement of such claim.

After the death of the decedent, and after proof thereof was furnished by the plaintiff, the defendant made an assessment upon its members and collected thereon the sum of $2,505.67. It thereupon sent to the plaintiff a receipt for $2,111.53, to be signed by her, accompanied by a letter stating that upon signing such receipt and returning it to defendant, a draft would be sent for the amount. The receipt was signed and returned, but the draft was not sent. The reason assigned was that the defendant had been informed that the certficate had been obtained by fraud.

The case was three times tried. The last trial resulted in a verdict for the plaintiff for the amount realized on such assessment, with interest.

*William F. Porter* and *Henry E. Turner*, for appellant.

*Isaac D. Garfield*, for respondent.

MARTIN, J.—Only two questions are presented on this

appeal which bear upon the plaintiff's right of recovery, which are:

*First.* Were the statements contained in the application, upon which the certificate in suit was issued, as to the health of the deceased, untrue?

*Second.* Was there a valid settlement of the plaintiff's claim?

Upon the first question, much evidence was given on the trial. The evidence introduced by the defendant tended to show that when such certificate was obtained, and when the application therefor was made, the decedent was, and for a considerable time prior thereto had been, afflicted with diabetes, which he well knew, and that this disease was the cause of his death. On the other hand, the evidence introduced by the plaintiff was to the effect that the decedent never had diabetes, and that his death was not the result of that disease. Upon this question there was a direct conflict in the evidence. The question was submitted to the jury by a charge, in which the court very fully and fairly presented the evidence bearing upon it, and to which no exception was taken.

It is a general rule that a new trial will not be granted on the ground that the verdict is against the weight of evidence where the testimony is contradictory. It is only where the verdict is so clearly against the weight of evidence as to furnish proof that the jury were influenced by passion, prejudice or mistake, that it should be set aside. It is not enough that the court would have reached a different conclusion. From a careful study of the evidence, we are satisfied that the verdict was not so clearly against the weight of evidence upon this question as to justify a reversal of the judgment.

This leaves for consideration on this branch of the case, the question as to the validity of the settlement between the parties. After the plaintiff's claim had matured, the secretary of the defendant had an interview with her hus-

band, and subsequently with her, which resulted in his paying her the sum of $500, in her giving a receipt in full for her claim under this certificate, and in his taking the certificate issued by the defendant. The effect of this receipt is sought to be overcome by evidence that it was obtained by threats that the defendant would cause the arrest of plaintiff's husband for obtaining such certificate by false pretensions, unless she signed such receipt. The evidence given on the part of the plaintiff was to the effect, that the defendant's secretary, who obtained this receipt, stated to the plaintiff that her husband had been guilty of a crime, and unless she signed the receipt he would be arrested, and that she would not have signed such receipt except for such threat. The defendant's evidence was to the effect that no such threats were made. This question was submitted to the jury, and the court charged: "It is only when the will is coerced by threats that she can be said to have been intimidated so as to amount to fraud and relieve her from the consequence of her act. In the language of the authorities, her will must have been constrained and overpowered by the threat of arrest, or whatever form the intimidation that is attempted to be practiced may be." Upon the evidence, and under these instructions, the jury found in favor of the plaintiff. The question whether this receipt was obtained by duress was a question of fact, and properly submitted to the jury. Dunham *v.* Griswold, 100 N. Y. 224.

We think the evidence was sufficient to justify the finding of the jury upon this question, and that the verdict should be upheld. This conclusion is sustained by the principle of the following authorities: Eadie *v.* Slimmon, 26 N. Y. 9; Haynes *v.* Rudd, 30 Hun, 237; s. c. 102 N. Y. 372; 2 N. Y. State Rep., 45; Fisher *v.* Bishop, 36 Hun, 112; s. c. 108 N. Y. 25; 13 N. Y. State Rep. 466; Schoener *v.* Lissaer, 107 N. Y. 111; 11 N. Y. State Rep. 368.

The appellant also contends that the amount of the re-

covery was excessive ; that by virtue of its by-laws, made subsequent to the issuing of the certificate in suit, the plaintiff should have received only five-sixths of the amount of the verdict rendered, which was for the amount of one full assessment. On the motion for a new trial herein, the learned trial judge thoroughly examined this question, and delivered a full and exhaustive opinion thereon, in which we concur. We think his conclusion, that the plaintiff was entitled to recover the amount of one full assessment, instead of five-sixths of that amount, was correct.

On the trial, Dr. Stowell, the son-in-law of the decedent, and the husband of the plaintiff, who was called as a witness for the plaintiff, was permitted to testify as to what occurred between the decedent and Dr. Wolcott. This evidence was objected to, upon the ground, " that the witness was incompetent under section 834." The court thereupon held, that as it did not appear that the witness was the physican of the decedent at that time, or that he went there for the purpose of being enabled to prescribe for him, he could not exclude the evidence. To this ruling the defendant excepted. The witness testified positively that he was not there in his capacity as a physician, and the evidence was sufficient to sustain the conclusion of the court that the witness was not there in his professional capacity. " When a party seeks to exclude evidence under this section, the burden is upon him to bring the case within its purview. He must make it appear, if it does not otherwise appear, that the information which he seeks to exclude was such as the witness acquired in attending the patient in a professional capacity not only, but he must also show that it was such as was necessary to enable him to act in that capacity." People *v.* Schuyler, 106 N. Y. 298, 304 ; 8 N. Y. State Rep. 860; Edington *v.* Ætna Life Ins. Co., 77 N. Y. 564. We do not think that this exception was well taken.

We have examined all the other exceptions of the defendants to the admission or rejection of evidence to which our attention has been called, even in the most general manner, and have found none that seem to require special consideration, or would justify a reversal of the judgment herein.

Judgment and order affirmed, with costs.

HARDIN, P. J., concurs.

MERWIN, P. J.—I concur,—except I think the recovery should be limited to five-sixths of the amount.

---

### NOTE ON SECTION 834 OF THE CODE.

The competency of the testimony given by a physician as a witness, as to information acquired in attending a patient, is regulated by the provisions of section 834 of the Code. The principle of evidence laid down by said section is plain and simple, but its application to the facts and circumstances of the various cases has been difficult, and has frequently consumed the time and attention of the courts. A presentation of the cases involving this question, both under the former and the present Code, together with the views of the courts thereon, will, therefore, be of practical benefit to the legal profession. Section 834 is as follows:

Section 834. A person, duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity.

The only grounds upon which a physician's testimony concerning his patient is inadmissible, because of the mere relation of physician and patient, are the grounds stated in section 834 of the Code. Estate of Darragh, Surr. Ct., N. Y. County, December 19, 1887.

*Intention of statute.*—The intention of section 834 of the Code evidently was to protect all communications made by a patient to his physician which the patient supposed, or had reason to believe, were protected by the provisions of the law. Id.

The plain purpose of this statute was to enable a patient to make known his condition to his physician without the danger of any disclosure by him which would annoy the feelings, damage the character, or impair the standing, of the patient while living, or disgrace his memory when dead. Pierson *v.* People, 79 N. Y. 424.

The spirit of the statute is so clearly intended to protect the patient

and not to shield one who is charged with his murder, that the statute is not to be so construed as to be used as a weapon of defense to the party so charged, instead of a protection to his victim. Id.

In the case of Pierson *v.* People, *ante,* an exception was recognized as one proper and necessary to be made, in the very nature of things, for no intention on the part of the legislature could be discovered to repeal the general principle which makes the safety of the citizen the supreme law of the state, or to depart from the general system of law which looks to the detection and punishment of crime. Grattan *v.* Met. L. Ins. Co., 80 N. Y. 281.

*To what actions applicable.*—Section 834 of the Civil Code is made applicable to criminal trials by section 392 of the Code of Criminal Procedure. People *v.* Brower, 53 Hun, 217.

The provision of section 834 of the Code, prohibiting physicians and surgeons from disclosing information acquired in attending a patient, is applicable to criminal actions. People *v.* Murphy, 101 N. Y. 126.

Section 834 of the Code applies to proceedings for the probate of a will. Loder *v.* Whelpley, 111 N. Y. 239.

The broad and sweeping language of section 834 of the Code cannot be so limited as to exclude testamentary cases from its operation. Renihan *v.* Dennin, 103 N. Y. 573.

The prohibtion of section 834 of the Code applies to testamentary cases. The language of the section is positive and unequivocal, and makes no exceptions as to the class of cases to which it shall apply. It must apply to testamentary cases as well as to any others, unless its plain provisions are to be repealed by judicial legislation. Mason *v.* Williams, 53 Hun, 398. In this case, physicians of the testator were examined and testified from knowledge procured at professional visits made by them upon the testator and by the testator to them; and the general term condemned the admission of this testimony and refused to consider it in the determination of the appeal.

The testimony of a physician as to the condition and capacity of a testator was held, in Matter of Connor, 55 Hun, 606, to be inadmissible under section 834 of the Code in proceedings for the probate of a will.

The construction given to this section will, in testamentary cases, where the contest relates to the competency of the testator, exclude evidence of physicians which is usually the most important and decisive; and, in actions upon policies of life insurance, where the inquiry relates to the health and physical condition of the insured, will exclude the most reliable and vital evidence which is absolutely needed for the ends of justice. Renihan *v.* Dennin, *ante.*

Section 834 of the Code applies to the affidavit of a physician made for the purpose of supporting an application for the appointment of a committee of a lunatic or habitual drunkard. Matter of Hoyt, 20 Abb. N. C. 162.

In the Matter of Baird, Supm. Ct., Chambers, March, 1887, which was a proceeding in lunacy, the testimony of medical attendants at the asylum, where the respondent had been in close confinement, as to his mental capacity, is prohibited by section 834 of the Code, which was held applicable to such proceeding.

*Who are physicians within the meaning of the section.*—The words " duly authorized to practice physic or surgery " found in section 834 of the Code were intended to apply only to those persons who are not prohibited by section 356 of the Penal Code from practicing. Wiel *v.* Cowles, 45 How. 307.

In Wiel *v.* Cowles, *ante,* which was an action brought by the plaintiff to recover damages for personal injuries, the defendant called a witness who had visited the plaintiff after the injuries were sustained, on several occasions, and asked him " what he found." The witness at that time had not been admitted to practice, nor was he a licensed physician. On an objection made by the plaintiff that the testimony was inadmissible under section 834 of the Code, the testimony was excluded. It was held that the information was not privileged, as the witness, when he acquired it, was not duly authorized to practice physic or surgery; and that the section ought not to be extended by construction.

*Relation of physician and patient.*—The relation of physician and patient is one of contract between the parties, for the employment of the services of the physician to examine the patient's condition, and if necessary to administer remedies. Matter of Freeman, 46 Hun, 458. It is not necessary that there should be any administering of remedies, but there must be an employment of the physician by the patient, except as hereinafter stated. In People *v.* Murply, *ante,* it was held that, though the physician was selected by the public prosecutor and sent to attend upon the person, the relation of physician and patient was established, because that person accepted his services, and he rendered them in that character. So, in the case of an infant, though the employment is made by the parent, and the infant is incapable of acting, the relation of physician and patient exists. So also, if one who was unconscious and for whom friends employed a physician.

In Grossman *v.* Supreme Lodge of Knights, etc., 53 Hun, 637, the physician testified that in association with the attending physician of the hospital, where the plaintiff was a patient, he had charge of different wards in the hospital, and assisted him in making the particular examination the result of which he was asked to disclose; that he partly attended the patient, and that he made the rounds of the hospital with the attending physician just out of curiosity, to acquire information in interesting cases : and it was held that he could not testify as to the patient's condition, under section 834 of

the Code. It was also held in this case that a physician, who attended the patient with another physician, though he did not have charge of her, was within the disqualification of the statute.

In Matter of Freeman, *ante,* the two witnesses to the will were physicians and surgeons, who were the only witnesses sworn on the hearing before the surrogate to prove the will, and the main question involved on the appeal was whether evidence was properly received as to mental capacity, under section 834 of the Code. The witnesses, on the day the will was executed, were each called to see the testatrix, and did so call and examine her professionally as to her mental condition on that day. Neither of them had seen her before during her last sickness, and had not, at any time prior thereto, acted as her family physician or treated her. The general term affirmed the decree of the surrogate admitting the will to probate upon the testimony of these two witnesses, but the concurring judges placed their opinion of affirmance upon different grounds. LEARNED, P. J., held that the relation of physician and patient did not exist, as the testatrix, who was conscious and capable of acting, did not accept the services of the witnesses as physicians, and that they were not employed to attend her professionally, and that the information acquired by them was not information acquired while attending a patient in a professional capacity, which was necessary to enable him to act in that capacity. LANDON, J. held, that the testatrix, by requesting the physicians to be subscribing witnesses, thereby expressly waived her priviledge, if she had any, to prevent their giving such testimony.

*What information prohibited.* The statute should not be so construed as only to prohibit the disclosures by a physician of any information of a confidential nature obtained by him from his patient while attending him in a professional capacity. Renihan *v.* Dennin, 103 N. Y. 573. The statute cannot be confined to such information, and the court is bound to follow and give effect to the plain language without interpolating such broad exception. Id. Grattan *v.* Met. L. Ins. Co., *ante;* Edington *v.* Ætna L. Ins Co., 77 N. Y. 564.

To bring a case within section 834 of the Code, it is sufficient that the person attended as a physician upon the patient and obtained his information in that capacity. Renihan *v.* Dennin, *ante;* Brigham *v.* Gott, 51 Hun, 636. In the case, first cited, above it was held accordingly that a consulting physician, brought to the patient at the request of the attending physician, is within the prohibition. It seems that physicians, summoned by the friends of the patient or even by strangers about him, are not excluded from its provisions, because they are not employed by the patient, nor a contract relation created between them and the patient.

It will be assumed from the relationship existing between the physician and his patient that information imparted was given or

obtained for the purpose of aiding the physician in prescribing, and was essential to enable him to prescribe, for the patient. Edington *v.* Mut. L. Ins. Co., 67 N. Y. 185.

In Matters of Coleman, 111 N. Y. 220, the testimony of physicians who testified to the unsoundness of mind of the testator during the year 1877 and subsequent thereto, from knowledge acquired by them while attending him respectively in a professional capacity, was admitted on the part of the contestants, under due objection, and the court of appeals held that it fell clearly within the prohibition contained in section 834 of the Code, as illustrated and applied in recent decisions of that court, and cited Grattan *v.* Met. L. Ins. Co., *ante;* Edington *v.* Mut. L. Ins. Co., *ante;* Westover *v.* Ætna Ins. Co., 99 N. Y. 56; People *v.* Schuyler, 106 N, Y. 318; Renihan *v.* Dennin, *ante.*

The defendant in People *v.* Brower, 53 Hun, 217, had aided in procuring a miscarriage and called upon a physician to employ him to save the woman's life, and informed him of the facts and circumstances attending the operation which implicated himself, to enable the physician to govern his treatment accordingly, and it was held that the statute, both in its letter and spirit, protected the confidence thus reposed in him and forbade him from betraying it.

In Feeney *v.* Long Island R. R. Co., 116 N. Y. 375, which was an action to recover damages for personal injuries, a witness sworn for the defendant testified that he was a practicing physician, and that on the day after the accident the plaintiff called upon and consulted him. He was then asked by defendant's counsel if he conversed with her about her injuries and if he made an examination of her, and the court excluded the evidence on plaintiff's objection that these questions called for a privileged communication. It was urged on appeal that the objection was premature, but the court of appeals held that the fact that the plaintiff consulted the physician on the occasion to which the inquiries related, when considered in connection with the nature of the questions themselves, was sufficient, in the absence of other proof, to bring them within the prohibition of the statute. See Renihan *v.* Dennin, *ante;* Grattan *v.* Met. L. Ins. Co., *ante;* Edington *v.* Mut. L. Ins. Co., *ante.*

It was held in Edington *v.* Ætna L. Ins. Co., 77 N. Y. 564, that, before information can be excluded under section 834 of the Code, it must appear that it was such as the physician acquired in some way while professionally attending a patient; and it must also appear to be such as was necessary to enable him to prescribe as a physician, or to do some act as a surgeon. If he has acquired any information which was not necessary to enable him to prescribe, or to act as a surgeon, he can be compelled to disclose such information, though he acquired it while attending the patient. Id.

Note on Section 834 of the Code.

It is not all information acquired by a physician, that is excluded by section 834 of the Code. Information obtained by him, even when in actual attendance upon his patient, may be put in evidence, provided the information was not necessary to enable him to act in a professional capacity. Estate of Darragh, *ante.*

The prohibition of section 834 of the Code does not extend to all information acquired in attending a patient in a professional capacity; but such information must be acquired for the purpose of enabling him to act in that capacity. Hoyt *v.* Hoyt, 45 Hun, 590; Renihan *v.* Dennin, *ante.*

Information acquired by a physician while attending a patient professionally is privileged, and the physician is not allowed to disclose it. Ferguson *v.* Mass. Mut. L. Ins. Co., 32 Hun, 306.

In an action on a policy of life insurance, it was held, in Dilleber *v.* Home L. Ins. Co., 87 N. Y. 79, that a physician is prohibited from disclosing information as to the condition of the insured acquired while attending upon him and which is necessary to enable him to prescribe as a physician.

In Matter of Darragh, *ante,* the physician had attended the deceased professionally, and had, for a considerable period, visited her as a friend, and not in a professional capacity, but was unable to separate the knowlege which he acquired as a physician, or while attending her in such capacity, from the knowledge he acquired when paying her a friendly visit, and his testimony was rejected.

Also in this same proceeding, a physician who had been employed by, and rendered services to, the deceased prior to her death, paid her in January preceding two visits which, it was claimed, were not professional visits. The examination was not restricted to these two interviews but embraced time in which he was attending her in a professional capacity; and it was held that it was error to receive testimony as to his opinion of her condition to understand the nature of a will or the disposition of property, or her ability to make a contract intelligently.

In Edington *v.* Mut. L. Ins. Co., *ante,* which was an action upon a policy of life insurance, an offer was made, on the part of defendant, to prove by a physician, who had been consulted professionally by the assured, that prior to the application he had been afflicted with certain diseases and excluded; and it was held that its exclusion was proper, though the testimony was expressly limited to what the witness knew independent of any information given or statements made by the assured.

In Pierson *v.* People, *ante,* the prisoner was accused of having caused the death of the deceased by poison. A physician, who was called by the prisoner to see him when sick from the poison, and who examined

and prescribed for him in the presence of the deceased's wife and the prisoner, was asked to state the condition in which he found the deceased at the time, both from his own observation and from what the deceased told him, and was allowed, under objection—on the ground that it was prohibited by section 834 of the Code, to answer the question, and it was held that the evidence was competent.

In People *v.* Murphy, *ante,* a physician, who after the commission of the alleged crime of abortion, was selected by the public prosecutor, sent by him, and attended upon the female upon whose person it was alleged to have been committed, was allowed on the trial to give, as a witness for the prosecution, his opinion as a medical expert, that an abortion had been performed, founded upon personal examination so made by him and upon what she told of the matter, and it appeared that she was alive at the time of the trial. It was held that the exception to the admission of the evidence was well taken; that the relation of physician and patient was established between the witness and the female, as she accepted his services in his professional character, though he was selected and sent by the public prosecutor; and that, as she was living, the disclosure, which tended to convict the prisoner, inevitably tended to convict her of a crime, or cast discredit and disgrace upon her. In this respect, this case differs from that in Pierson *v.* People, *ante,* where the statute was invoked solely for the protection of a criminal, and not at all for the benefit of the patient, and when the latter was dead so that an express waiver of the privilege had become impossible.

In People *v.* Schuyler, 106 N. Y. 298, which was an indictment for murder, in which the defense was insanity, the prosecution on the trial called as a witness the physician of the jail where defendant had been confined for six months prior to the trial. This witness was employed by the board of supervisors, and as such had medical charge of all the prisoners in the jail, and had examined defendant at the request of both parties, and " kept an eye on the case," but there was no proof that defendant had been sick at any time during the six months, or that the witness had ever been called to attend upon, or prescribe for him, as a physician. A hypothetical question, from which was excluded all personal knowledge he had of the defendant was put to the witness as to the sanity or insanity of the defendant when he committed the act. The witness was unwilling to say that he could exclude this knowledge from affecting his answer, and under objection answered, " sane." It was held that the evidence was competent even though the witness did not eliminate the knowledge he acquired as jail physician from the answer, and that the mere fact that the witness was the jail physician did not create, between him and defendant, the relation of physician and patient.

Note on Section 834 of the Code.

In Wilcox *v.* Wilcox 46 Hun, 32, 37, a physician, who had attended the deceased in his last sickness, and whose interviews with him, and attention given to his mental condition were solely for the purpose of medical treatment, was called as a witness and asked by the counsel for defendant, who was the heir and devisee of deceased, whether he was able to form an opinion, from time to time, in regard to his mental condition, apart from any information which he obtained from him for the purpose of his treatment, and it was held that the evidence was properly excluded.

In Jones *v.* B., B. & W. E. R. R. Co., City Ct. Brooklyn, December 26, 1888, two physicians testified that they were called in consultation with another physician, to examine the injuries of plaintiff, and that they examined the injuries to his leg, on the day of the amputation. Each of them was asked by defendant's counsel, " what was the condition of Jones' leg at that time ? "   This was excluded on the ground that it called for privileged information acquired by a physician in attending a patient in a professional capacity ; and it was held that such information was privileged unless expressly waived.

In Grattan *v.* Met. L. Ins. Co., 80 N. Y. 281, the company, in order to show the falsity of the representations of the insured as to the cause of his mother's death, called a physician, who had attended her in her last illness and had never visited or seen her in any other than a professional capacity, and was examined as to the cause of her death, her symptoms, etc., but the testimony, under objection, was excluded, and held by the appellate courts, to have been properly excluded.

The statute includes all knowledge acquired from the patient himself, from the statements of others surrounding him, and from observation of his appearance and symptoms.   Grattan *v.* Met. L. Ins. Co., *ante.*

Sect. 834 of the Code prohibits information received through the sense of sight as well as that communicated through the ear.   Grattan *v.* Met. L. Ins. Co., *ante.*   The examination of a patient need not be private, in order to exclude information so derived.   Id.   Nor is it required to show, in the first instance, by formal proof, that the information was necessary to enable the witness to prescribe.   Id.   See Brigham *v.* Gott, *ante.*

The information which the physician receives by his eyes, by his ear, and by his touch, is in the course of his professional employment, and it may or may not be necessary for the purpose of prescribing; but the law shuts the door against all disclosures of information acquired by a physician in attending a patient in a professional capacity without requiring absolute proof that such information was necessary to enable him to act in that capacity.   Matter of Darrah, 52 Hun, 591.

*Section 834 of the Code,* being remedial, should receive a liberal interpretation, and not be restricted by any technical rule; and when it speaks of information, it means not only communications received from the lips of the patient, but such knowledge as may be acquired from the patient himself, from the statement of others who may surround him at the time, or from observation of his appearance and symptoms.  Edington *v.* Mut. L. Ins. Co., 67 N. Y. 185.

In order to prohibit the disclosure by a physician of the information he has received in respect to the condition of his patient, it is not necessary to show that the knowledge he has acquired while attending him, was necessary to enable him to prescribe; it is sufficient that he has obtained the information during the course of his professional employment.  Matter of Darragh, *ante.*

In Grattan *v.* Met. L. Ins. Co., *ante,* a physican was called upon professionally to make an examination of a brother of the insured.  He had never seen him before nor has seen him since, and his whole knowledge of him came from the one interview, which was purely and wholly of a professional character.  He was asked on the part of defendant, " what opinion did you form, based on the general sight of the man, before you made an examination, or before you had any conversation with him ?"  The question was held to have been properly excluded as privileged within the statute.  The court of appeals had held in this same case on former appeal that the communication to the physician's sense of sight is within the statute, and as much so as though it had been oral and reached his ear; 80 N. Y. 281; 36 Am. Rep. 617, and that information derived from observation of the patient's appearance and symptoms must not be disclosed.  Edington *v.* Mut. L. Ins. Co., 67 N. Y. 185.  The case of Grattan *v.* Met. L. Ins. Co., *ante,* is not like the case of Edington *v.* Mut. L. Ins. Co., 77 N. Y. 564.  In the latter case, the physician had seen the patient, both before and after he attended him professionally, and had a possible knowledge derived from observation when no professional relation existed.

*Proof of disqualification.*—When one seeks to prove by a physician a fact regarding his patient, the physician is himself a competent witness, to show whether his knowledge of such fact was or was not acquired in attending such patient, and was or was not necessary to the due performance of his professional duties.  Estate of Darragh, *ante.*

In Stowell *v.* Amer. Co-operative Relief Ass'n, reported above, it was held that where the physician testifies that he was not acting in a professional capacity when he obtained the information, and the contrary is not shown, his evidence is properly admitted.

In Sloan *v.* N. Y. C. R. R. Co., 45 N. Y. 125, a question to the attending physician of plaintiff, whether she had the venereal disease while

under his care as a physician, was held to have been properly excluded as privileged under the statute. The presumption from the question is that he learned it as a physician for the purpose of prescribing. Id. To require the plaintiff to make the preliminary inquiry whether he learned the fact for the purpose of prescribing would in effect, if the fact existed, deprive the plaintiff of the protection of the statute. Id.

An examination of the patient is not required to be made in order to exclude the information derived through the sense of sight. Brigham *v.* Gott, *ante.*

It is proper to prove by the physicians that they attended a person professionally, in order to establish that the relation of physician and patient existed between the parties, but as soon as the relation is established, the seal of secrecy imposed by the statute must be kept sacred. Numrich *v.* S. L. R. and L. of C., City Ct. N. Y., January 24, 1889.

*What information competent.*—A physician was allowed, in Matter of O'Neil, Surr. Ct. N. Y. County, October 5, 1889, to testify to the declarations of testator as to making a will, and his advice to him on that subject, for the reason that such facts were not necessary for him to know to enable him to prescribe for his patient.

In Burley *v.* Barnhard, 45 Hun, 588, a physician was sworn as a witness and testified that he had treated the deceased for some time, and that he often saw him when he was not attending him as a physician, and was then asked whether he had observed him at such times. It was held that it was competent for him, under section 834 of the Code, to answer affirmatively, and also to answer questions which only went to the observations made of the outward, visible facts, that were seen by him on these occasions, and which were open and visible to the sight of any person.

The family physician, on the probate of a will, was allowed in Matter of Boury, Supm. Ct., Second Department, May 9, 1887, to testify to family events in no way connected with physical complaints, and which were not obtained for the purpose of treating a patient.

In Brown *v.* Rome, W. & C. R. R. Co., 45 Hun, 439, which was an action to recover damages for injuries sustained while crossing defendant's track in a village street, a physician, who attended plaintiff professionally immediately following the injury, was called by defendant and testified that he had visited the plaintiff professionally three times. The defendant offered to show by the witness that on the third visit the plaintiff stated to him that when coming down the hill he heard persons hallooing to him, and saw a man swing his hat, but didn't think where he was until the train was right on him. The evidence was excluded on the ground that the witness was incompetent to give it under section 834 of the Code. It was held that its exclu-

sion was error, on the ground that, though the information was acquired while attending the patient in a professional capacity, it was not necessary to enable him to act in that capacity.

A physician not employed by the plaintiff, but who was sent by the defendant to procure information for his employer as·to the extent of plaintiff's injury, and obtain admissions as to the accident, and who made an examination for that purpose, was held, in Heath *v.* B. & 7th Ave. R. Co., 57 Super Ct. 496, not to be within the prohibition of section 834 of the Code, and should be allowed to testify to statements made by plaintiff to him at that time, for the reason that he was not, at any time, attending the plaintiff in a professional capacity, nor was the information acquired by him in attending plaintiff as a patient, nor was it necessary to enable him to prescribe for plaintiff.

In Stanton *v.* Parker, 19 Hun, 55, the contestants called the physician, who had attended the deceased for eight years previous to his decease, for the purpose of showing that he was incompetent to make a will at the time of executing the codicil. The physician stated that all his knowledge was derived from what he observed while he was attending the deceased professionally, and his evidence was excluded by the surrogate. It was held, on appeal, that the evidence was not prohibited by section 834 of the Code, as it did not appear that the information sought was information of any fact which was necessary to enable the witness to act in the capacity of the physician of the testator, but of facts which were open to the observation of any person who had seen and conversed with the testator; and further that even though the probition of said section was applicable, the contestants, as the personal representatives of the deceased, might waive it. This last principle has been expressly overruled by subsequent cases.

It was held in Hoyt *v.* Hoyt, 112 N. Y. 493, that the testimony of physicians, examined by the proponent, as to interviews with the testator upon the subject of the contestant's capacity, was not prohibited by section 834 of the Code, as it was not information necessary to enable the witnesses to act in a professional capacity toward the testator.

In Matter of Halsey, Surr. Ct., N. Y. County, March 7, 1880, it was held, in surrogate's court, that a physician is not prohibited, by section 834 of the Code, from testifying, in a proceeding for probate, to a statement made to him by the testator while he was attending him, which, he testifies, was not necessary to enable him to act in his professional capacity.

In Kendall *v.* Gray, 2 Hilt. 300, the evidence offered was not from the physician, and as the communication did not appear to have been made the basis of a prescription, it was held competent.

The defendant, in an action on a certificate of membership in a

mutual benefit society, may prove by physicians the fact that they attended the insured professionally, though they can not disclose the information thus acquired.   Numrich *v.* Supreme Lodge, etc., *ante.*

It was held in Babcock *v.* People, 15 Hun, 347, that a physician was not excused from testifying as to disclosures made by a person who called upon him for medicine, where such person was not consulting him for himself, and it did not appear that he was representing any one else who needed or deserved medical assistance.

In Hewitt *v.* Prince, 21 Wend. 79, it was held that a physician, who had been consulted by the defendant as to the means of procuring an abortion, was not privileged from testifying.   The decision was placed upon the ground that the communication to the physician could not be considered as made while he was consulted professionally, and that the information given was not essential to enable him to prescribe for the patient.

*Burden of showing disqualification.*—When a person seeks to exclude evidence under section 834 of the Code, the burden is upon him to bring the case within its purview.   He must make it appear, if it does not otherwise appear, that the information which he seeks to exclude was such as the witness acquired in attending the patient in a professional capacity not only, but he must also show that it was such as was necessary to enable him to act in that capacity.   People *v.* Schuyler, *ante.*

The burden of proving the prohibition against disclosures, by a physician, is on the party claiming the prohibition.   Heath *v.* B. & 7th Ave. R. Co., *ante;* Stowell *v.* Amer. Co-op. Ass'n, *ante.*

It is not incumbent on the party who seeks information from a physician who has been in attendance upon a patient, to show that the information was not acquired as specified in the statute; but the party objecting must in some way make it appear, if it does not otherwise appear, that the information is within the statutory exclusion.   Edington *v.* Ætna L. Ins. Co., *ante.*

In Record *v.* Village of Saratoga Springs, 46 Hun, 448 which was an action brought to recover damages for injuries alleged to have been occasioned by a fall upon a sidewalk of the defendant, a physician called by the defendant testified that he was a regular practicing physician and surgeon, and that he attended the plaintiff in that capacity from October to January, and defendant's counsel asked him several questions tending to show her physical condition during that period. To these questions the plaintiff objected under section 834 of the Code, and the objection was sustained.   Upon the hearing of the appeal, the defendant urged that the physician did not produce his license and was not examined as to his being "a person duly authorized to practice physic or surgery," and it was held that, in the absence of any objec-

tion upon the trial to the sufficiency of the proof, the plaintiff is entitled on the appeal to the benefit of the presumption that the physician had the license which the law requires to entitle him to practice.

*Who may object.*—Any party to the action can make the objection, as the evidence in itself is objectionable, unless the objection is waived by the person for whose protection the statutes were enacted. Westover *v.* Ætna L. Ins. Co., *ante.*

The right of objecting to the disclosure of a privileged communication is not strictly personal to the party making it, or to his personal representatives, but an assignee may exercise it, and the decease of the original party does not affect his right to assert this privilege. Edington *v.* Mut. L. Ins. Co., *ante.*

In Matter of Hannah, Supm Ct., Third Department, November, 1887, it was held that the testimony of physicians who attended the testatrix professionally was incompetent and should never been given at all; and that the privilege should have been asserted by the physicians themselves.

A defendant who has been indicted for a crime, can not avail himself of the privilege of another person with respect to communications of a privileged character by a physician. People *v.* Murphy, 3 N. Y. Crim. 338.

*Waiver.*—Section 836. The last three sections apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by the person confessing, the patient or the client.

After the patient's death, no one can waive the privilege furnished by section 834; and the fact, therefore, that a physician is called as a witness by an executor and proponent of a will, does not render him competent to disclose any information acquired while attending upon the testator. Loden *v.* Whelpley, *ante;* 16 N. Y. C. P. 89.

Such evidence is made incompetent at the option of the patient only, and in case she elects, at any time, to remove the seal from the lips of the witness, the evidence may properly be received. McKinney *v.* Grand St., etc., R. R. Co., 104 N. Y. 352.

A physician is not only absolutely prohibited by section 834 of the Code from disclosing any information made to him professionally by his patient, but, by section 836, it is provided that the seal of the law placed upon such disclosures can be removed only by the express waiver of the patient. Westover *v.* Ætna L. Ins. Co., *ante.* The sections are absolute and unqualified, and in all cases where they apply, the seal of the law must forever remain, until removed by the patient. Id. Upon his death, the privilege of waiver, therefore, ceases; his executor or administrator may not exercise it. Id. The purpose of the laws would be thwarted, and the policy intended to be promoted thereby would be defeated, if death removed the seal of secrecy from the

communications and disclosures which a patient should make to his physician. Id. This case was an action upon a policy of life insurance which contained a clause avoiding it in case the insured committed suicide or died by his own hand. The insured had hanged himself and the plaintiff claimed that he was insane at the time. To show his insanity, plaintiff called a physician who had attended the deceased a short time before his death and asked him as a witness the question, "State how you found him?" The company objected to the question as within the prohibition of the Code, but the court overruled the objection and admitted the testimony. The court of appeals held its admission to be erroneous, and reversed the judgment.

The rule of evidence which excludes the communications between physician and patient, must be invoked by an objection at the time the evidence of the witness is given. Hoyt *v.* Hoyt, 112 N. Y. 493. It is too late, after the examination has been insisted upon and the evidence has been received without objection, to raise the question of competency by a motion to strike it out. Id.

The rule of the statute goes no further than to stamp such communications as confidential, and to protect them from disclosure, when objected to, unless the privilege has been completely waived. It does not prohibit the examination of this class of witnesses; but it prohibits the testimony of the character described from being given in the face of an objection. Hoyt *v.* Hoyt. Id.

A party does not waive the privilege of section 834 of the Code by the commencement of an action to recover damages for the injuries which the physician has been called to attend. Jones *v.* B., B. & W. E. R. R. Co., *ante.* See Sloan *v.* N. Y. C. R. R. Co., *ante;* Hope *v.* Troy & L. R. R. Co., 40 Hun, 441; aff'd 110 N. Y. 643. Nor does the fact that the plaintiff has testified that his leg was broken, open the mouth of his physician to tell all the information he has acquired. Jones *v.* B., B. & W. E. R. R. Co., *ante.* Nor does the fact that a physician, sent by the defendant to look after its interest and incidentally to attend the wounds of plaintiff, was fully examined before the jury as to plaintiff's injuries, amount to such a waiver. Id. No act of defendant can be construed as an express waiver of plaintiff's right to enforce his privilege. Id. See Record *v.* Saratoga Springs, *ante;* Pope *v.* Troy & L. R. R. Co., *ante;* Westover *v.* Ætna L. Ins. Co., *ante.*

In Hoyt *v.* Hoyt, *ante,* the physicians who attended upon the testator were produced by the proponents in compliance with a notice given by the contestants under section 2618 of the Code, requiring their examination. They were examined and cross-examined without any objection being taken to their competency under section 834 of the Code. Subsequently contestant's counsel moved to strike out their testimony and this motion was denied. It was held that the statutory provision

had been waived by the contestant's demand for their examination, and failure to object either to the ruling of the surrogate, with respect to limits of their examination, or to the examination, of the witnesses themselves.

In Hope *v.* Troy & L. R. R. Co., *ante,* which was an action by plaintiff to recover for injuries alleged to have been caused by defendant's negligence, plaintiff had had three physicians, each one at a different time from the other, in attendance upon her. She called one of them and he gave testimony as to the extent and character of her injuries. The defendant then called the other two, and plaintiff objected under sections 834, 836 of the Code to their disclosure of any information they had obtained in their professional visits, and the objection was sustained. It was held that the objection was properly sustained for the reason that the plaintiff, by waiving her right with respect to one, did not waive her privilege to exclude the disclosures of the other two, physicians. This case was affirmed by the court of appeals, without opinion, and reported in 110 N. Y. 643; 17 N. E. R. 873.

In Record *v.* Village of Saratoga Springs, *ante,* the plaintiff, who had been attended by two physicians, called one of them on the trial to testify to her condition. She herself testified that both physicians were in consultation upon one occasion and visited her together, and the defendant, upon the cross-examination of plaintiff's medical witness, examined him as to the condition of the plaintiff upon that occasion, and as to what then took place. It was held that the claim made by the defendant that the plaintiff has, by her own testimony and that of her witness, expressly waived her privilege of preventing the other physician's disclosures, cannot be sustained. The act of the defendant in cross-examining the plaintiff's witness clearly does not constitute a waiver of her right to insist upon the silence of the other physician; otherwise the defendant would compel the plaintiff to abandon a privilege which she refuses to waive. Id. A patient attended by two physicians may waive her privilege as to one, and refuse to do so as to the other physician. Id.

When the ban of secrecy has been removed by the patient, and the information has been divulged in legal proceedings, it cannot be again hidden or concealed, and the right to object further thereto has not been conferred by the statute. McKinney *v.* Grand St., etc. R. R. Co., 104 N. Y. 352. The consent to waive the privilege, when once given and acted upon, cannot be recalled, and the patient can never be restored to the condition which the statute, from motives of policy, has sought to protect. Id. In this case, where upon the trial of an action against a railroad company, to recover for injuries caused by negligence, a physician, who, as such, attended upon the plaintiff after her injury, was called as a witness in her behalf, and testified as to all the facts

bearing upon her physical condition, learned by him while so attending upon her, it was held that, upon a subsequent trial, the defendant was entitled to call and examine him as a witness in regard to such facts.

In Grattan *v.* Met. L. Ins. Co., *ante,* a physician was examined as a witness by the defendant, and testified that he was called as a witness on a former trial, but did not say by whom, and that he attended the insured's brother in his last illness. The question was put to him and on objection excluded, whether upon such former trial he was not asked by plaintiff's counsel if he attended plaintiff's brother in his last illness, to which he answered in the affirmative, and that plaintiff's brother died of consumption; and it was held that plaintiff's inquiry on the former, did not preclude his objection on the latter trial; that it waived for that occasion and under the existing circumstances an objection which might have been relied upon. The decision in this case seems, at first sight, to be opposed to the principle laid down subsequently by the same court in McKinney *v.* Grand St. etc., R. R. Co., *ante.* In the latter case, the patient was living and himself called and examined the physician in regard to all the facts, and thus made public the whole matter, while in the former case, it was not shown who called the witness on the first trial, and the plaintiff may, at that time, have asserted her privilege, been overruled by the court, and so driven to these inquiries without any voluntary waiver of her rights; and the plaintiff was not the patient, and, therefore, could not, under section 836 of the Code, make a permanent binding waiver; and the death of the patient had sealed forever the lips of the witness so that no one thereafter could, either expressly or impliedly, waive his privilege.

In Alberte *v.* N. Y., L. E. & W. R. R. Co. 43 Hun, 421, which was an action brought to recover damages for injuries sustained by the plaintiff in a collision upon defendant's railway, while a passenger upon one of its trains, a physician who attended the plaintiff was called by him and sworn as a witness upon the trial. The defendant objected to testimony as to the injury and treatment of plaintiff therefor, under section 834 of the Code, and thereupon plaintiff's counsel waived the provision of the section. It was held that this was sufficient to render the evidence admissible, and that the attorney was authorized to waive the prohibition of the section under the circumstances.

So the court of appeals held in the same case, reported in 118 N. Y. 77, that where a physician is called by his patient as a witness, the latter's attorney is authorized on his behalf to waive the privilege and remove the seal of secrecy to the evidence that he in his judgment sees fit to offer, for and on behalf of his client.

Where the patient himself, as a witness in his own behalf, testifies

in regard to a consultation with a physician, and gives his version of the circumstances of the privileged interview, the adverse party is *no longer precluded*, by section 834 of the Code, from introducing the testimony of the physician as to the same interview.   Marx *v.* Man. R. Co., 56 Hun, 575.   The reason for the rule *no longer exists*, after the patient has himself opened the door of the consultation room to the jury.   He may keep the door closed; but he cannot be permitted to open it so as to give an imperfect and erroneous view of what is taking place there, and then shut the door, when the actual facts are about to be disclosed.   Id.

The provisions of the Code in respect to an attorney are the same as those relating to physicians, and it has been held that, where a testator has asked his attorney to become a witness to his will, he has expressly waived this privilege.   Marx *v.* Man. R. Co., *ante;* In re Coleman, 111 N. Y. 220; Alberte *v.* N. Y., L. E. & W. R. R. Co., *ante.*

In Grattan *v.* Met. L. Ins. Co., *ante*, it was claimed that death severs the relation of physician and patient, and that information as to the cause of death cannot be acquired to enable the physician to prescribe for a patient; and it was held that the case before the court was not one where the physician had been called in for the first time after the death of the patient, but one where he learned the cause of his patient's death while attending her in a professional capacity from the symptoms occasioned by the disease, and so his lips, not only were sealed during the life of his patient, but if he loses his patient by death, must remain closed.

The query was raised in People *v.* Schuyler, *ante*, as to whether section 834 of the Code makes a physician incompetent to testify that his patient was free from disease of any kind; and also whether a party can himself upon the trial expose his ailments and make them the subject of inquiry, and then object that his physician shall tell anything he knows about them; but the case does not solve either question.

## NOTE ON SECTION 831 OF THE CODE.

The common law did not permit a husband or wife to be a witness for or against each other, in either a civil or criminal action, with some exceptions in favor of the wife.   This rule has been modified from time to time by statute in this state; and now in addition to being competent witnesses in civil actions, except in certain cases upon specified questions, they are permitted to testify in favor of each other in a criminal proceeding, but cannot be compelled to testify against each other at the call of any other person hostile to either of them. But in no case can they be compelled, or without the consent of the

other, if living, allowed to disclose a confidential communication, made by one to the other, during the marriage.

Section 831 of the Code reads as follows:

Section 831. A husband or wife is not competent to testify against the other upon the trial of an action, or the hearing upon the merits of a special proceeding, founded upon an allegation of adultery, except to prove the marriage, or disprove the allegation of adultery. A husband or wife shall not be compelled, or without consent of the other, if living, allowed to disclose a confidential communication, made by one to the other, during marriage. In an action for criminal conversation, the plaintiff's wife is not a competent witness for the plaintiff, but she is a competent witness for the defendant, as to any matter in controversy; except that she cannot, without the plaintiff's consent, disclose any confidential communication had or made between herself and the plaintiff.

In Southwick *v.* Southwick, 49 N. Y. 519, it was held that in a civil action between husband and wife, in respect to money transactions, either can be a witness; and the case of Minier *v.* Minier, 4 Lans. 421, was to the same effect.

In Matteson *v.* N. Y. C. R. R. Co., 62 Barb. 364, it was held that, in a civil action, husband and wife were competent witnesses in their own suit.

Section 831 of the Code forbids not all communications between husband and wife, but only confidential communications. Parkhurst *v.* Berdell, 110 N. Y. 386. Clearly not all communications made between husband and wife when alone are confidential communications within the meaning of the section. They are such communication as are expressly made confidential, or such as are of a confidential nature or induced by the martial relation. Id. In this action which was brought to compel an accounting by the defendant for certain moneys and securities of the plaintiff, the wife of defendant, upon the examination of plaintiff's counsel, gave evidence as to conversations with him when they were alone as to plaintiff's securities taken by him, his obligations to her for the same, and his promise to secure her therefor. It was held that these conversations by the witness with her husband could not be excluded by the provisions of this section, as they were ordinary conversations relating to matters of business which there is no reason to suppose he would have been unwilling to hold in the presence of any person.

Section 831 of the Code does not apply to actions where the husband seeks to recover damages for alienation of a wife's affection. The wife is not a party to such an action, and the evidence is not strictly against her. Smith *v.* O'Brien, 53 Hun, 633.

So in Woods *v.* Gledhill, 56 Hun, 220, it was held that the plaint-

iff in an action of criminal conversation is not disqualified by section 831 of the Code from testifying in his own behalf. Such case is not within the prohibition of this section. The plaintiff is not offered as a witness to give evidence against his wife, but his evidence is proposed to be given against the defendant in the action. It is true that it may have the effect of implicating her in the misconduct, but as the action is not against her, but against another person, the proposed evidence will be against him and him alone. Id.

In Wottrich *v.* Freeman, 71 N. Y. 601, the plaintiff called his divorced wife as a witness for him in an action of criminal conversation, and she was allowed to testify to the circumstances of her marriage with plaintiff and to prove the charge set forth in the complaint; and it was held that she, being no longer the wife of the plaintiff, was competent to testify for him, both to prove the marriage and the offense charged.

In Irsch *v.* Irsch, 12 N. Y. C. P. 181, it was held that, on the trial of an action founded upon an allegation of adultery, a husband or wife is competent, subject to the general rules of evidence, to give all testimony that may have a material effect in convincing or persuading the mind of a judge or jury, either directly or by necessary inference, that the allegation of adultery is untrue, and the testimony is not limited to a simple denial.

In an action for a divorce on account of the defendant's adultery, section 831 of the Code renders the plaintiff incompetent as a witness against the defendant, save as to the marriage and adultery, but the former still remains a competent witness in favor of the latter party. Bailey *v.* Bailey, 41 Hun, 424. In this action, the defendant was and had been for some time a lunatic, and her guardian *ad litem*, interposed the usual general answer. After the plaintiff had testified to the marriage, the defendant's counsel sought to prove by him adultery on his part, and also the insanity of the defendant at the time of the commission of the offense alleged on her part. The court excluded the evidence, holding that the plaintiff was not competent to testify to any fact save the marriage. It was held by the general term that the exclusion of evidence of condonation, or of the wife's insanity, was error.

The amendment made to section 831 of the Code in 1879 was held in Hennessey *v.* Hennersey, 58 How. 304, not to have removed the restriction theretofore imposed by statute, as to parties to an action for divorce testifying in their own behalf.

And in this case, it was further held that under the provisions of rule 78, now rule 73, a defendant in an action for divorce cannot be permitted to testify in her own behalf, to contradict the plaintiff, in

respect to the matters as to which that rule permits the plaintiff to testify.

Section 2 of chap. 182 of laws of 1876. In all criminal trials, and examinations before trial, a husband or wife may be examined as a witness in behalf of the other, but upon no such trial or examination shall a husband or wife be compelled to testify against the other.

At common law, the wife could not be a witness against her husband on account of the marital relations, as being against public policy, except where a crime was committed in the absence of witnesses, and this exception was allowed only from the necessity of the case. Bihin *v.* Bihin, 17 Abb. 19; Moffat *v.* Mount, Id. 4; People *v.* Carpenter, 9 Barb. 580; People *v.* Colburn, 1 Wheeler, 479.

The act of 1867 did not render the wife competent to give evidence against her husband in criminal proceedings. People *v.* Crandon, 19 Hun, 490.

Section 828 of the present Code, which has provided that a husband or wife may be witnesses against each in certain cases, does not apply to criminal proceedings. Id. In this case, it was held that a wife is not a competent witness against her husband in proceedings to convict him as a disorderly person.

In Wilke *v.* People, 53 N. Y. 525, it was held that the wife of the prisoner could not be a witness for him. By a note in 13 Abb. N. S. 375, the same rule was stated and followed in Foster's case, in which the conviction was afterwards affirmed by the court of appeals.

By the rules of evidence prevalent at common law, neither husband nor wife was permitted to testify for or against each other in any action, civil or criminal. People *v.* Houghton, 24 Hun, 501. Some exceptions there were where the wife would otherwise be exposed to personal injury without remedy. Id. Nothing was accomplished in softening the rigor of this severe rule in the direction of criminal prosecution until 1876, when a husband or wife was permitted to be examined as a witness in behalf of each other in all criminal trials and examinations before trial, but not against each other. Id. In this case, the defendant was indicted and tried for bigamy; and at the trial, the public prosecutor brought against the accused his wife as a witness, who was willing to testify against her husband, and, against objection, gave material and damaging testimony. The general term held, on appeal from the judgment of conviction, that a wife cannot, though willing to do so, be allowed to testify against her husband in a criminal trial.

Under section 2 of chap. 182, of Laws of 1873, it was not optional with the wife whether she would become, or not become, a witness on behalf of her husband. The legislature meant to confer, and did confer, upon the husband the privilege, in a criminal proceeding against him, of calling his wife as a witness, if he chose to do so; and if called by him,

she must respond, or be punished for contempt. People *v.* Hovey, 29 Hun, 382. They may be witnesses, if the right thus conferred is exercised by either, but cannot be compelled to testify against each other at the call of any other person hostile to either of them.

In proceedings to compel a husband to provide for the support of his wife, she was held in People *ex rel.* Commissioners *v.* Bartholf, 24 Hun, 272, to be a competent witness to prove the fact of marriage. See also Van Tuyl *v.* Van Tuyl, 57 Barb. 235.

It was held in People *v.* Petmecky, 2 N. Y. Crim. R. 450, that a wife is a competent witness, under section 715 of the Penal Code, against her husbend on the trial of an indictment against him, within the limitation that she shall not be compelled to disclose any confidential communication that has passed between them during the marriage. The judgment in this case was affirmed in 99 N. Y. 415, without discussing, or deciding this question.

A wife was held, in People *v.* Briggs, 60 How. 17, not to be a competent witness against her husband, and cannot be called against him by the people without his consent, before the grand jury.